**In re HOLYWELL CORPORATION, et al., Debtor(s).**

**Bankruptcy Nos. 84–01590–BKC–TCB to 84–01594–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

Aug. 8, 1985.

Fred H. Kent, Jr., Jacksonville, Fla., for debtor-in-possession.

John Kozyak, Miami, Fla., for Olympia & York.

Scott D. Sheftall, Miami, Fla., for Miami Center Joint Venture.

Irving Wolff, Miami, Fla., for Barnett Bank.

Thomas F. Noone, New York City, for Bank of N.Y.

Joel Aresty, Miami, Fla., for Unsecured Creditors Committee.

Vance Salter, Miami, Fla., for Bank of N.Y.

## CONFIRMATION ORDER

THOMAS C. BRITTON, Bankruptcy Judge.

These five chapter 11 debtors are owned, controlled and dominated by the individual debtor, Theodore B. Gould. On February 15, the debtors filed separate, but identical plans. Eleven days later, the Bank of New York, the major creditor whose claim is undersecured and hopelessly in default, filed an alternative plan. The competing plans were submitted simultaneously to the creditors for their separate acceptance or rejection and a joint confirmation hearing was held on April 29. Although conventional wisdom under the previous Act has been that creditors cannot be relied upon to understand and vote upon more than one plan at a time, the simultaneous submission of competing plans is clearly authorized. 11 U.S.C. § 1129(c); B.R. 3018(c). I am convinced that the risk of confusion was acceptable in this instance.

All parties are agreed that the debtors' assets, principally a major office building and luxury hotel in downtown Miami must be liquidated and the sooner the better. The bank's plan rests upon a firm commitment by the bank to purchase the property for $255.6 million. The debtors' plans are based upon a "contract" to sell the property to an individual, Hadid, for a substantially higher price. However, there is no binding commitment from Hadid, who in effect has an option for which he paid nothing. The debtors have been in this court for nearly a year and have, so far, been unable to produce a firm contract at any price.

The competing plans differ significantly in their respective classification and treatment of creditors.

Because of the continuing and rapid escalation of the debtors' debt, this case could not tolerate the delay which would be caused by a separate and consecutive consideration of these competing proposals. In retrospect, there has been no indication that the creditors were befuddled by the simultaneous submission of the alternative plans.

By an overwhelming margin, the creditors (measured by the dollar amount of their claims) have demonstrated a preference for the bank's plan. The percentage of creditors who voted to *reject* each plan with respect to each of the five debtors was as follows:

|  | Debtors' Plans | | BONY Plan | |
|---|---|---|---|---|
| Holywell | 97% | Rejection | 15% | Rejection |
| MCLP | 80% | " | 10% | " |
| MC Corp. | 99% | " | 10% | " |
| Chopin | 99% | " | 0.1% | " |
| Gould | 80% | " | 12% | " |

Each of the creditors' committees has elected to support the bank's plan.

The substantial sums involved coupled with the simultaneous consideration of competing plans have resulted in spirited litigation between the two camps on a number of issues. The circumstances do not require and time simply does not permit a review and discussion of all these issues in this order. If this court had permitted the attorneys to do so, the charges, countercharges, law suits, briefs and oral arguments with respect to these issues would almost certainly continue until the last available penny had been spent to pay counsel. If the creditors are to salvage anything from these cases, they must be resolved as rapidly as the law permits in order that the assets may be liquidated and the continuing losses may be ended.

The principal support for the debtors' plans and, therefore, the major attack on the bank's plan comes from Gould and Olympia & York Florida Equity Corp. O. & Y. leased virtually all the furniture, fixtures and equipment required for the two large buildings. It has never received any payment. The bank has contended that the leases were not "true leases" but instead were unperfected financing agreements. By a judgment entered in an adversary proceeding on July 17, 1985, I rejected the bank's contention and agreed with O. & Y. The bank has appealed that decision and has filed a Second Amendment to Plan (C.P. No. 854) by which it in effect guarantees payment in full of the O. & Y. claim of

$14.4 million, if the bank is unable to obtain a reversal of my decision.

The bank's plan subordinates the O. & Y. claim to the payment of all other unaffiliated creditors. By this order, I am approving that classification. O. & Y. will surely seek review. The bank's Second Amendment to its plan assures the funding necessary to pay the claim in the event my decision with respect to subordination is reversed.

The remaining issues between the bank, on the one hand, and O. & Y. and the debtor MCLP (of which O. & Y. is, with Gould, a joint general partner) do not merit further elaboration here.

The debtors' major contention has been that the assets are worth substantially more than the bank has offered to pay. The only way to be certain with respect to this issue is to delay liquidation as long as Gould requests. If I did so and if he produced no more tangible results during the next year than he did in the past year, virtually every creditor except the bank would be wiped out and the substantial loss now faced by the bank would become a blood bath. To me, the decision appears clear.

Gould's other major criticism of the bank's plan is its provision for a modified form of substantive consolidation proposed by the plan and approved by me in an order entered on July 23. (C.P. No. 840). There is a pending application for rehearing and reconsideration of that order. No new points are raised and rehearing is denied. The issue was aired at great lengths and no purpose would be served by a repetition here of the analysis and comments made by the court, on the record at the end of that hearing.

Gould's remaining contentions do not, I think, require discussion.

During the confirmation process, the bank entered into a stipulation with a creditors' committee on April 29. (C.P. No. 614). There was an addendum to that stipulation on the same day. (C.P. No. 564). A second addendum was agreed upon on May 30 (C.P. No. 709(c)), and a third addendum was agreed upon on July 30. (C.P. No. 855) That stipulation as modified is approved.

I find that the Amended Plan (C.P. No. 478) filed March 26 by the Bank of New York as modified by the Second Amendment (C.P. No. 854) filed July 30 meets each of the requirements specified in 11 U.S.C. § 1129(a) and (b). The bank has invoked (C.P. No. 546) the cram down provisions of § 1129(b)(1). They are justified in this instance because the plan as amended does not discriminate unfairly and is fair and equitable with respect to each class of claims that is impaired under, and has not accepted, the bank's plan. That plan, as amended, is confirmed.

The several plans filed by the debtors do not meet the foregoing statutory requirements. They have been rejected by the creditors and confirmation is denied with respect to each of the debtors' plans.