HOLYWELL CORPORATION, Miami Center Limited Partnership, Miami Center Corporation, Chopin Associates, Theodore B. Gould, Appellants,

v.

The BANK OF NEW YORK, Appellee.

No. 85–3225–CIV.

Bankruptcy Nos. 84–01590–BKC–TCB to 84–01594–BKC–TCB.

United States District Court,
S.D. Florida,
Miami Division.

March 20, 1986.

See also Bkrtcy., 48 B.R. 69, Bkrtcy., 49 B.R. 694, Bkrtcy., 51 B.R. 56.

Raymond C. Bergan, Williams & Connolly, Washington, D.C., Fred H. Kent, Jr., Betsy C. Cox, Kent, Watts & Durden, Jacksonville, Fla., for appellants.

Vance E. Salter, Steel, Hector & Davis, S. Harvey Ziegler, Kirkpatrick & Lockhart, Miami, Fla., Thomas F. Noone, Emmet, Marvin & Martin, New York City, for appellee.

## ORDER AFFIRMING CONFIRMATION ORDER AND PLAN

ARONOVITZ, District Judge.

### I. THE NATURE OF THE APPEAL

THIS APPEAL involves, as appellants, five (5) related debtors who simultaneously filed Chapter 11 proceedings in the United States Bankruptcy Court, submitting almost identical Plans of Reorganization; and, as appellee, the principal creditor, the Bank of New York, a mortgage lien-holder for the subject real property development.

Appellants appeal from two (2) Orders of the Bankruptcy Judge, intertwined and interdependent:

A. An Order approving the substantive consolidation of the debtors' estates (Court Paper ["CP"] 840); and,

B. The trial court's Order confirming the Plan of Reorganization proposed by the appellee here, the Bank of New York, the major creditor of the debtors' estates (CP 906).

These appeals are taken from the Order approving Substantive Consolidation of the debtors' estates and the Order Confirming the appellee's Plan of Reorganization.

## II. THE PARTIES AND THEIR RESPECTIVE INTERESTS

The debtors are as follows:

1. Holywell Corporation ("Holywell") is a Delaware corporation, incorporated in 1976, which, together with its subsidiaries, owns, operates, and provides a full range of services for commercial real estate. Theodore B. Gould is the sole stockholder of Holywell.

2. Miami Center Limited Partnership ("MCLP") is a Florida limited partnership which was formed in 1979. The general partners are Theodore B. Gould and Miami Center Corporation. There are numerous limited partners, which include Theodore B. Gould and Holywell. MCLP leased the land from Chopin Associates and then constructed the Miami Center Project on that land.

3. Miami Center Corporation ("MCC"), a Florida corporation, was incorporated in 1979. MCC is a subsidiary of Holywell. Holywell, in turn, is the principal stockholder of MCC.

4. Chopin Associates ("Chopin"), a Florida partnership composed of Theodore B. Gould and MCC, was formed in 1979 and is the owner of the land underlying the Miami Center.

5. Theodore B. Gould ("Gould") is the sole stockholder, a director and president of Holywell, the president and a director of MCC, a general partner of MCLP, and a partner of Chopin Associates.

The Bank of New York (the "Bank") was the construction lender for the Miami Center Project.

Construction of the Miami Center Project commenced in 1980. Chopin purchased the land and, together with MCLP, obtained a construction loan from the Bank of New York on March 23, 1980 in the initial amount of $112,500,000. Chopin's mortgage was $23,000,000.

Gould, in addition to his interest in the Miami Center Project, also acquired four blocks of land, still vacant, adjacent to the Miami Center Project. That vacant land is not involved in these bankruptcy proceedings. Gould then entered into a joint venture in May 1981 with Olympia and York Florida Equity Corporation ("O & Y"), called the Miami Center Joint Venture ("MCJV"), which provided for the development of those blocks and further provided that O & Y would loan to MCJV $7,775,000. These funds were used by MCJV to acquire furniture, fixtures, and equipment ("FF & E") which were leased to MCLP for use in the Pavillon Hotel and Podium, which are part of the bankruptcy estate. The MCJV–MCLP leases of FF & E were referred to by the parties and the Bank and in the proceedings below as Lease "A" and Lease "B". MCJV is solvent and has not filed under the Bankruptcy Code.

MCLP also leased additional FF & E, including electronic and telephone equipment, from two subsidiaries of Holywell, Holywell Telecommunications Company ("Holywell Telecommunications") and Holywell Leasing Company ("Holywell Leasing") (the "C" and "D" Leases, respectively) on February 1, 1983. Holywell and Gould supplied capital to Holywell Leasing and Holywell Telecommunications in the amount of $7,718,466 to purchase the FF & E which was leased by Holywell Telecommunications and Holywell Leasing to MCLP. Like MCJV, Holywell Telecommunications and Holywell Leasing are solvent companies and have not filed under the Bankruptcy Code.

The appellants are five (5) related or affiliated debtors which voluntarily sought

reorganization under the Bankruptcy Code. The debtors developed the Miami Center Project in downtown Miami. Only Phase I of that project was built. Phase I consists of an office building, a hotel, retail space connecting them, and a parking garage. The project failed financially, and several hundred creditors are still owed money by the debtors for goods and services. The appellee Bank was the construction lender for the project, and was owed more than $240,000,000. Total claims against the debtors exceed $350,000,000.

Over 400 creditors have or had an interest in these proceedings, of which at least 200 represent wage-earner claims. Since the confirmation of the appellee's proposed plan of reorganization by the Bankruptcy Court's Confirmation Order (which Order is the subject of this appeal), the Liquidating Trustee has paid, or has reserved funds to pay, all creditors in Classes 1 through 6, as those classifications were drawn under the Plan.[1] The amount paid out to claimants or "reserved" for payment by the Liquidating Trustee thus far is approximately $14 million, leaving approximately $8.9 million dollars remaining in the consolidated debtors' estates to pay the remaining creditors' claims.

### III. PROCEDURAL HISTORY

The Chapter 11 proceedings, which culminated in the Order of Confirmation from which this appeal is taken, were initiated through the filing of voluntary petitions under Chapter 11 by each of the five debtors/appellants who are parties to this appeal. The voluntary petitions for reorganization were filed by the debtors on August 22, 1984, less than a month after the appellee had initiated foreclosure proceedings in state court upon declaring the debtors' mortgage loans on the Miami Center to be in default.

In the course of Chapter 11 reorganization proceedings, both the debtors and the Bank of New York filed competing reorganization plans. The five debtors each submitted a separately filed plan, but the content of the five debtors' plans was virtually identical. (The details of the competing plans are discussed in Part IV of this opinion, *infra.*) The various creditors' committees and individual creditors, upon consideration of the competing plans, overwhelmingly approved the Plan of the appellee, the Bank of New York, and rejected the debtors' Plans. The Bank's Plan was subsequently confirmed by the Bankruptcy Court (CP 906).

The debtors then sought, unsuccessfully, to stay the implementation of the confirmed Plan, pending appeal to the United States District Court. When the Bankruptcy Court conditioned the issuance of such a stay upon the posting of a supersedeas bond in the amount of $140 million dollars (CP 1013), the debtors filed an emergency motion in the United States District Court seeking relief from the bond requirement. That Court, by the Order of Chief Judge James Lawrence King, reduced the amount required to obtain a stay of the Bankruptcy Court's order to $50 million dollars (Docket Number ["DN"] 4). Unable to post this reduced bond, the debtors finally sought relief from Judge King's order by filing an appeal in the Eleventh Circuit Court of Appeals. The appeals court dismissed the debtors' appeal on the basis of lack of jurisdiction on October 9, 1985. On October 10, 1985, pursuant to the confirmed Plan of Reorganization, the Miami Center property was sold to the appellee's designee for $255.6 million dollars.[2]

Prior to the sale of the Miami Center Project, on October 1, 1985, the debtors initiated the instant appeal to this Court from the Confirmation Order entered below. This Court received extensive briefs

---

**1.** *See* Part IV., *supra.*

**2.** The purchase price of $255,600,000 was funded by the Bank through elimination of its mortgage liens, the waiver of interest owed by the debtors thereon, and the application of certain cash collateral (approximately $30,000,000) de-

rived from the sale by the debtors of certain real estate holdings near Washington, D.C. The closing also resulted in the Bank paying over to the Trustee approximately $11.4 million dollars cash at closing.

as well as the parties' designated record on appeal, and heard oral argument by counsel for the debtors and for the Bank on December 5, 1985. During the course of this appeal, and prior to the hearing noted above, the appellee filed a motion to dismiss this appeal on the ground of mootness. Having considered the issues presented by the appeal, the record before it, and the appellee's motion to dismiss, this Court entered its Order of Remand and Denial of Motion to Dismiss (DN 35) on December 30, 1985. In that Order, this Court denied the appellee's motion to dismiss on the ground that the Court retained the capacity to grant effective relief to the appellants herein in the event that they should prevail on the merits in this appeal. Upon the subsequent motion of the appellee, the Court certified the question of mootness and the propriety of its Order denying the motion to dismiss pursuant to Title 28 U.S.C. § 1292 (DN 44), and the appellee filed its interlocutory appeal in the Eleventh Circuit Court of Appeals. Under date of March 17, 1986, the Eleventh Circuit DENIED permission to appeal pursuant to 28 U.S.C. § 1292(b).

By the same Order of Remand and Denial of Motion to Dismiss, this Court remanded the substantive appeal to the Bankruptcy Court for the entry, by that court, of explicit findings of fact and conclusions of law upon which this Court could properly base its appellate review. This remand was necessitated by the determination that the Confirmation Order entered by the Bankruptcy Court was not sufficiently supported by such findings and conclusions.

On remand, the Bankruptcy Court held an evidentiary hearing on all matters requested by the parties. Additional evidence was adduced on the following requested matters, to-wit:

A. The Value of the Miami Center Project;

B. The Value or "Cost/Benefit" of the District Court Action; and,

C. The Calculation of the Bank's Lien.

On January 29, 1986, the Bankruptcy Court concluded its proceedings on remand, having solicited from all parties their proposed findings of fact and conclusions of law as well as the objections of each party to the submissions of opposing parties. The Bankruptcy Court thereupon entered its Order on Remand, in which it adopted *in toto* and unaltered, the proposed findings of fact and conclusions of law submitted by the appellee, the Bank of New York.[3] Thus, the initial Confirmation Order, as amended by the adoption of these findings of fact and conclusions of law, constitutes the basis of the debtors' substantive appeal.

---

**3.** The appellants in their Brief Following Order on Remand have severely chided the Bankruptcy Judge, and the appellee, for the manner in which the findings of fact and conclusions of law were adopted in this case. Specifically, the appellants take issue with the decision by Judge Britton to adopt verbatim, without any deletion or addition, the proposed findings and conclusions submitted by the appellee while rejecting totally those proposed by appellants.

This Court is well aware of the censure which this practice often elicits, and which the Court of Appeals for this Circuit has clearly expressed. *Cabriolet Porsche-Audi, Inc. v. American Honda Motor Company,* 773 F.2d 1193, 1198 n. 2 (11th Cir.1985) (disapproving the practice of verbatim adoption of findings and conclusions prepared by one party to the litigation). This Court does not condone the practice followed by the Bankruptcy Judge in this case. It is the Court's belief that a trial judge should not accept *in toto* the findings and/or conclusions proposed by a party to litigation without an independent analysis in which the judge augments or replaces the proposed findings with his own.

Notwithstanding this admonition, the Court is also aware of the United States Supreme Court's ruling in *Anderson v. Bessemer City,* 470 U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). There, while disapproving of the practice of adopting unchanged the proposed findings and conclusions of a party, the Court noted that such findings "nevertheless ... are those of the Court and may be reversed only if clearly erroneous." 105 S.Ct. at 1511. Thus, whether this Court approves of the procedure followed by Judge Britton upon remand in this appeal is not determinative. In light of the ruling in *Anderson,* but with a clear appreciation of the admonition of the Eleventh Circuit in *Cabriolet Porsche-Audi,* this Court has given close scrutiny to the findings of fact adopted below, but within the scope allowed such review by the "clearly erroneous" standard of Bankruptcy Rule 8013.

## IV. THE COMPETING PLANS OF REORGANIZATION

The debtors' plans (CP 466–470) differed substantially from that submitted by the Bank of New York and later confirmed by the Bankruptcy Court. The debtors' plans would have depended for their success upon the consummation of an "option" for the sale of all property owned by the debtors as part of the Miami Center property to the Hadid Investment Group, Inc. (*See, e.g.,* the Amended Plan of Reorganization filed by the Miami Center Corporation, CP 468, Exhibit A.). The plan(s) further provided, in pertinent part, for a classification scheme by which, *inter alia,* the claims of the Bank of New York under its mortgage liens would be equitably subordinated, pursuant to Title 11 U.S.C. § 510(c), to Class 5, which is subordinate to administrative claims, tax claims and mechanics liens, *inter alia.* The claims of affiliated (with the debtors) creditors would be relegated to the lowest class (Class 10), and would include claims by one debtor/appellant against another.

Lastly, the proposed plans of the debtors explicitly reserved their rights to pursue claims which were the subject of litigation in other forums. One such case is a civil action filed by the debtors against the Bank of New York (Case No. 85–0228–Civ–HOEVELER) in the United States District Court for the Southern District of Florida, which complaint alleges fraud, usury, breach of contract, and claims under the federal RICO statutes. As noted above, the plans submitted by the debtors received little support from the creditors [4], and were found by the court not to have met the standard for confirmation established by Title 11 U.S.C. § 1129.[5]

The plan submitted by the Bank of New York, adopted by the requisite number of creditors, and finally confirmed by the Bankruptcy Court, contained the following major provisions:

—The Bank would acquire the entire Miami Center Project property, including the FF & E for $255,600,000. The acquisition would be funded through the net amount already owed to the appellee by the debtors (approximately $240,000,000) to which would be added, as cash collateral, the proceeds of the sale by the debtors of certain realty owned by them in Washington, D.C. ($32,000,000). This latter sum of $32,000,000 has been held and maintained as additional collateral by the Bank pursuant to Judge Britton's order of December 31, 1984 (CP 303). The proceeds of closing would also produce approximately $11.4 million dollars in cash available for use under the Plan.

—A Liquidating Trustee would be appointed to oversee the operations of the Miami Center in place of the debtors in possession, and to effectuate the terms of the Plan as directed by the Bankruptcy Court. This Liquidating Trustee would be required, by the terms of the Plan, to effect the dismissal of the debtors' civil action before Judge Hoeveler, discussed previously.

—The Bank would set aside $15,000,000, backed by surety bonds, to pay the claims of two creditors which had leased FF & E to MCLP, namely, O & Y and MCJV (the partnership comprised of Olympia & York Florida Equity Corporation and debtor Theodore Gould).

—The claims of Miami Center Joint Venture, Holywell Telecommunications and Holywell Leasing, affiliated creditors who had leased the FF & E to the Miami Center owners, would be equitably subordinated to, or given a classification junior to, those of other credi-

---

4. *See* the Confirmation Order entered by Judge Britton 54 BR 41, (CP 906). At page 2 of that order, the Bankruptcy Court set out the results of the creditor voting on the respective plans:

|  | Debtors' Plans | | BONY Plan | |
|---|---|---|---|---|
| Holywell | 97% | Rejection | 15% | Rejection |
| MCLP | 80% | " | 10% | " |
| MCC | 99% | " | 10% | " |
| Chopin | 99% | " | 0.1% | " |
| Gould | 80% | " | 12% | " |

5. Confirmation Order (CP 906), at 5.

tors on the ground that these were "insider" claims.

—The estates of the five debtors would be combined through substantive consolidation.

The Bank's proposed plan of reorganization was confirmed on August 8, 1985 by the Bankruptcy Court's Confirmation Order (CP 906) and was implemented upon the dismissal of the debtors' appeal by the Eleventh Circuit Court of Appeals on October 9, 1985.

## V. PRESENT STATUS AS TO CONSUMMATION OF THE PLAN BY THE LIQUIDATING TRUSTEE

The United States Bankruptcy Judge noted the following in his Findings at Paragraph 57 (Page 33 of Order on Remand):

"The Court has now also had the unusual opportunity to observe the substantial consummation of the Plan under evaluation (after the debtors failed to post the appeal bond upon which a stay was conditioned). The fairness, feasibility, and propriety of the Plan have been verified by the following, as reported by the parties and the Liquidating Trustee:

(a) All Class 1 administrative claims have been paid or reserved for;

(b) The Project was sold on October 10, 1985, resulting in the satisfaction in full of the claim of the class 2 creditor (the Bank) and the termination of interest (accruing at over $2 million per month) and negative cash flow from operations;

(c) The Class 3 creditor has been paid in full;

(d) Undisputed claims in Classes 4 through 6 have been paid in full, and funds have been reserved for all disputed claims;

(e) Several disputed claims have been compromised, saving the estates millions of dollars as against the amount claimed; and,

(f) There remain sufficient funds for the satisfaction in full or in part of the claims of the Gould-affiliated claimants (although the exact amount cannot yet be determined because so many of the claims are unliquidated).

No stay is in effect, and the confirmed plan has been consummated. The debtors' property passed to the Liquidating Trustee, and the debtors were discharged under Code Section 1141....".

## VI. STANDARD OF REVIEW

It is settled beyond dispute that a district court, in deciding an appeal from a bankruptcy court's ruling, must accord substantial deference to the trial court's findings of fact, reversing these only when they are "clearly erroneous". *Matter of Missionary Baptist Foundation of America,* 712 F.2d 206, 209 (5th Cir.1983); *Bankruptcy Rule* 8013. Conclusions of law, however, are freely reviewable by the district court. *Matter of Multiponics,* 622 F.2d 709, 713 (5th Cir.1980).

## VII. ISSUES ON APPEAL

In their appeal from the Bankruptcy Court's Confirmation Order, the debtors/appellants raised seven distinct objections to the confirmed plan. In the course of the extensive briefing and oral argument in which counsel for the parties have participated, it has become evident to this Court, and acknowledged by counsel, that two of the issues raised in this appeal predominate:

A. The Substantive Consolidation of the Debtors' Estates; and,

B. The Equitable Subordination (or improper classification) of the claims of various creditors who were affiliated with the debtors.

### A. Substantive Consolidation

This Court is keenly aware of the seemingly harsh results which may be produced by substantive consolidation if the Bankruptcy Court invokes it inappropriately or contrary to law. Consequently, this phase of the appeal has been studiously examined.

■ The Bankruptcy Court, by its order of July 23, 1985 (CP 840) ordered the substantive consolidation of the debtors' estates. This ruling was reinforced by that court in its Confirmation Order entered August 8, 1985 (CP 906). The effect of substantive consolidation upon the debtors in this Chapter 11 proceeding is more than merely procedural; it entails the combination of the assets and liabilities of the individual debtors and the elimination of interdebtor claims, excepting those incurred under the authorization of the Bankruptcy Court.[6] *See generally* 5 Collier on Bankruptcy, § 1106 (15th Edition). Substantive consolidation is within the power of a bankruptcy court by virtue of its general equitable power to issue those orders necessary to effectuate the provisions of the Bankruptcy Code. *In re Richton International Corp.*, 12 B.R. 555, 557 (S.D.N.Y. 1981), *citing Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

■ In order to justify the imposition of substantive consolidation upon debtors in a Chapter 11 proceeding, it is incumbent upon the proponent of consolidation to show that the creditors will suffer greater prejudice in the absence of consolidation than the debtors (and any objecting creditors) will suffer from its imposition. *In re Snider Brothers*, 18 B.R. 230, 238 (D.Mass. 1982). As an aid to (but not as a substitute for) making this determination of the balance of equities for and against substantive consolidation, many courts employ a seven-part objective inquiry into the interrelationships of the entities to be consolidated. These seven factors (not all of which must be found to support consolidation) are:

(1) The presence or absence of consolidated financial statements;

(2) The unity of interests and ownership between various corporate entities;

(3) The existence of parent and intercorporate guarantees on loans;

(4) The degree of difficulty in segregating and ascertaining individual assets and liabilities;

(5) The existence of transfers of assets without formal observance of corporate formalities;

(6) The commingling of assets and business functions;

(7) The profitability of consolidation at a single physical location.

*In Re Donut Queen*, 41 B.R. 706, 709 (Bktcy.E.D.N.Y.1984).

■ In its Order of Remand to the Bankruptcy Court, this Court instructed the court below in its findings of facts and conclusions of law to address, *inter alia*, the *Donut Queen* factors, and to enter specific findings and conclusions thereupon. Having closely reviewed the findings of fact and conclusions of law entered by the Bankruptcy Court, and having considered the briefs and oral argument of counsel for the parties, the pertinent portions of the record on appeal, and the applicable law, it is the conclusion of this Court that the order imposing substantive consolidation upon the estates of the five debtors, and that portion of the Confirmation Order which adopts this ruling, was proper and correct as a matter of law and was based on sufficient factual findings which were not, themselves, clearly erroneous.

In Paragraphs # 30 to 41 of its Order on Remand, the court below entered findings of fact in support of its rulings on substantive consolidation. A review of these findings in comparison to the *Donut Queen* factors reveals that there exists in this record strong and convincing evidence to show the existence of at least five of the seven factors enumerated in that decision:

1. The presence of consolidated financial statements (inapplicable to debtors Holywell and Miami Center Corp.);

---

**6.** Certain inter-debtor loans were specifically allowed by the Bankruptcy Court during the conduct of the Chapter 11 proceedings below to enable the debtors in possession to continue

operation at the Miami Center. The so-called "super-priority" loans are discussed more fully at Part VII.B(3), *infra*.

2. The unity of interests and ownership between the various corporate entities;

3. The existence of cross-claimants of guarantees on loans to other debtors;

4. ...;

5. ...;

6. The commingling of assets and business functions;

7. The profitability of consolidating the debtors in one location.

As to the two remaining factors (the degree of difficulty in segregating individual assets and the transfer of assets absent corporate formalities), no explicit findings of fact were entered in the court's Order on Remand.

The Bankruptcy Court's findings on five of the seven *Donut Queen* factors constitute a factual basis for its decision to order substantive consolidation in this case. This Court, however, must go further than merely evaluating the correctness of these factual findings. It must assess the propriety of imposing substantive consolidation as a matter of law. In this aspect of its review, this Court will affirm those conclusions of law entered below which correctly apply the law. Where the Bankruptcy Court has erred in its conclusions, this Court will conduct a *de novo* review of the legal issues presented in this appeal.

Therefore, this Court rules that the Bankruptcy Court correctly determined, as a matter of law, that substantive consolidation was proper in this case. At Paragraph 67 of its Order on Remand, that court applied the standard of *In Re Snider, supra*, to the record facts in determining that greater prejudice would ensue to the proponents of substantive consolidation if that remedy were denied than would be suffered by the debtors through its imposition. Furthermore, the court's determination of the effect of the five objective factors (¶ Nos. 64 (a), (b), (f) and (g)) as proper grounds for consolidation coincides with this Court's result upon review of the record and the applicable law. For the foregoing reasons, this Court AFFIRMS that portion of the Confirmation Order (CP 906), and the separate Order on Substantive Consolidation (CP 840), approving the substantive consolidation of the estates of the five debtors/appellants which are parties to the instant appeal.

In Paragraph 66 of the Bankruptcy Judge's Order on Remand (Page 40), it is stated:

"66. The debtors have claimed prejudice, but have not proven it.... The debtors never demonstrated prejudice as an unavoidable consequence of substantive consolidation....".

The burden of demonstrating prejudice more properly should have been placed upon the creditor/appellee. However, this Court has reexamined, in its totality, the entire record herein and by *de novo* consideration, has determined that there was ample evidence to demonstrate that, in fact, appellee had carried the burden of showing no prejudice to the appellants, notwithstanding the Bankruptcy Court's findings that the debtors never demonstrated prejudice. Accordingly, the determination of the *Snider* principles have been appropriately applied and the burden is found to have been carried by appellee.

B. *Equitable Subordination/Junior Classification*

The second key element of the plan of reorganization confirmed by the Bankruptcy Court's Confirmation Order is the equitable subordination (or, as appellee chooses to characterize it, the junior classification) of certain creditor's claims, otherwise eligible for a higher priority, on the ground that they represented "insider" claims. The claims so subordinated include those of Miami Center Joint Venture and Olympia & York (Class 7) and the claims of the affiliated creditors which are the subsidiaries of debtor Holywell Corporation (Class 8). A third category of claims affected by the "equitable subordination" aspect of the confirmed reorganization plan are certain, so-called "super-priority" loans which were made by various debtors to MCLP with the express authorization of the Bankruptcy

Court to supply necessary funds for the operation of the Miami Center during Bankruptcy Court proceedings, or to satisfy pressing tax obligations.

The Court has been especially sensitive to the equitable subordination aspect of this appeal and has therefore taken the utmost care in scrutinizing the record, the findings and conclusions relevent to this issue, and the treatment accorded this measure by the competing plans. After careful analysis of all the briefs and oral arguments received by the Court, it has become clear that appellants are really complaining about three sets of claims which were subjected to junior classification as a result of the Bankruptcy Court's rulings:

1.) The lease claims of Olympia & York and Miami Center Joint Venture (the "A and B leases") arising from their leases of furniture, fixtures and equipment (FF & E) to Miami Center Limited Partnership (MCLP).

2.) The lease claims of affiliated creditors Holywell Telecommunications Company and Holywell Leasing Company (the "C and D leases") for FF & E leased to MCLP.

3.) The claims of debtors Gould and Holywell and of affiliated creditor Twin Development Corporation under their "super-priority loans" to MCLP.

Since each of these categories of subordinated claims involves a distinct group of creditors, the Court deems it appropriate to consider each in turn.[7]

(1) *The Lease Claims of Creditors— Olympia & York and Miami Center Joint Venture*

■ Miami Center Joint Venture and Olympia & York entered into certain lease agreements (the "A" and "B" Leases) whereby these entities leased furniture, fixtures and equipment to MCLP which

were installed in the Miami Center. The validity of these leases (i.e., the fact and ruling that they are "true leases" as opposed to mere financing devices) was determined by the Bankruptcy Court in the course of an adverserial proceeding. (*See* Memorandum Decision dated June 24, 1985 —CP 781.) The claims of O & Y and MCJV under these leases were explicitly subordinated to the claims of the nonaffiliated creditors (Class 6) by being placed under the confirmed plan in Class 7.

From the Bankruptcy Court's orders declaring the leases as "true leases" and subordinating the creditors claims under those leases, the respective *parties in interest* have taken appeals to the District Court. These appeals, which are currently pending before the Honorable C. Clyde Atkins, Senior U.S. District Judge, are:

—*Case No. 85-3230-CIV-ATKINS:* An appeal by creditors O & Y and MCJV from the Confirmation Order of the Bankruptcy Court, specifically objecting to the subordination of their lease claims under the confirmed plan.

—*Case No. 85-3430-CIV-ATKINS:* An appeal by the Bank of New York from the Memorandum Decision of the Bankruptcy Court (CP 781) which determined the "A" and "B" leases to be "true leases".

The appellants in the instant appeal have raised the objections of *those* creditors as a method of attacking the validity of the overall reorganization plan. However, the issue of whether the claims of O & Y and MCJV have been wrongly subordinated (or classified) is one which the debtors/appellants in the instant appeal lack standing to assert because they are not parties actually injured by this classification. *R.T. Vanderbilt Co. v. OSHA Rev. Comm.,* 708 F.2d 570, 574 (11th Cir.1983). This issue is prop-

---

7. If this aspect of the confirmed Plan (i.e., equitable subordination or classification) rested solely on a review of the subordination of claims which the appellants herein had standing to pursue, this Court would be required to analyze the findings and conclusions relevant to subordination under the standard of *Matter of*

*Mobile Steel Co.,* 563 F.2d 692, 700 (5th Cir.1977). Such an analysis is not required here, however. For reasons that are set out more fully herein, none of these three subordinated claims are in a procedural posture such that these appellants may properly raise them in the context of the instant appeal.

erly presented in the appeal before Judge Atkins, brought by the parties which are directly affected by the challenged ruling, and is therefore not a proper matter for adjudication by this Court. It is possible that as a result of Judge Atkins' ruling, the classification of this claim which Judge Atkins may grant, could possibly affect the Plan overall—but this is purely a contingency which may never occur and if it did, the Bankruptcy Judge would still be vested with jurisdiction to review the matter to ascertain a change or different classification as directed by Judge Atkins. On the other hand, Judge Atkins' ruling may require no change in classification.

### (2) *The Lease Claims of Affiliated Creditors—Holywell Telecommunications Company and Holywell Leasing Company*

For the same reasons discussed above with regard to the "A" and "B" Lease claims, the appeals filed by creditors Holywell Telecommunications Company (HTC) and Holywell Leasing Company (HLC) and assigned to the Hon. James W. Kehoe (Case No. 85–3431–CIV–KEHOE) are matters for which the appellants before this Court lack standing. One of these leases affects the telephonic equipment installed in The Project by lease arrangement, and the other affects certain electronics and telecommunications equipment, including television cable. Clearly here, and with regard to the "C" and "D" leases, these matters involve parties other than the debtors and who are truly the *parties in interest* (affiliated creditors).

8. The existence of the three authorized loans to Miami Center Limited Partnership from debtor Holywell Corporation, from debtor Theodore Gould, and jointly by Gould, Holywell and Twin Development Corporation is not disputed by either party. Although larger amounts were authorized to be loaned to MCLP than were actually released from the cash collateral fund from which the loan proceeds derived, the record reflects the following actual transfers of funds:

It should be noted that it is not, and has never been, the purpose of this Court to interfere in any way with the matters pending before these judges. In particular, as concerns the appeals before Judge Atkins, the determination of the validity of the "A and B" leases and the proper classification of the creditors' claims thereunder are matters not properly before this Court, so the instant order shall not affect those ongoing appeals.

### (3) *The So-called "Super-priority Loans"*

A third aspect of the proceedings in the Bankruptcy Court which the appellants contend had the effect of subordinating (or eliminating) claims deserving higher priority was the apparent elimination of a "super-priority" assigned, by orders entered in the Bankruptcy Court, to loans made to Miami Center Limited Partnership with the express authorization of the Bankruptcy Court. In their briefs to this Court, appellants have identified three such loans.[8]

The confirmed Plan of Reorganization did not address the classification of these "super-priority" loans directly. It is the appellants' contention that the portion of the plan which provided for the substantive consolidation of the debtors' estates had the effect of eliminating these inter-debtor claims. The appellee counters that it is immaterial whether these claims were, in fact, subordinated (to Class 8) or retained their "superpriority" status immediately junior to the Bank's mortgage lien, since any payment from one creditor to another leaves those funds in the combined pool

Holywell to MCLP: $1,419,921.99
Gould to MCLP : $2,489,507.78
Twin Development, et al.: $ 615,757.91
$4,525,187.68

The "super-priority" which attached to these loans was a protection granted by the Bankruptcy Court's orders to preserve the priority (subject to the Bank's liens) of the claims of creditors of the individual debtors (i.e. Gould and Holywell). The significance of this "priority" was diminished by the substantive consolidation of the five debtors' estates, whereby creditors of Gould and/or Holywell could reach the assets of

which remains reachable by all the creditors of any debtor (likewise an effect of the substantive consolidation provision of the Confirmation Order).

The ultimate disposition of these "super-priority" liens is a pending matter yet to be decided by the Bankruptcy Court, and is therefore a matter not within the scope of the Confirmation Order which is the subject of this appeal. Because the record is silent as to how (and whether) these liens were subordinated or eliminated, it is incumbent upon the Bankruptcy Court to resolve these questions after further adjudication. If the treatment accorded to these loans materially and adversely affects the rights of any *party in interest*, the terms of the Bank's Plan expressly permit any such party to assert a claim for relief from the consolidation provision [Article XIII, page 40, of the Plan; Debtors' initial appendix, page 090]. Under Article XIV(e) of the Plan [*Id.*, page 091], the Bankruptcy Court would have continuing jurisdiction to hear and determine any dispute regarding the appropriate treatment of these loan claims.

## C. Other Issues Presented on Appeal

In addition to the two main elements of the confirmed Plan of Reorganization from which this appeal is taken, there have been raised several other aspects of the plan which, the appellants contend, warrant reversal.

### (1) The Authorization to the Liquidating Trustee to Dismiss a Pending Lawsuit Filed by the Debtors

Since the inception of this appeal, the appellants have urged this Court to reverse the Confirmation Order on the ground that the confirmed plan called for the voluntary dismissal by the Liquidating Trustee of a civil action filed by the debtors (the District Court action, [*See* page 9–10, *supra.*]) On appeal, the debtors/appellants contend that the Bankruptcy Court was without authority to order the dismissal of that action, and

that in doing so it unconstitutionally ousted the District Court from its proper jurisdiction.

In the first instance, the lawsuit was a chose in action which was part of the debtors' estate. 11 U.S.C. § 541(a)(1). As such, it was within the power of the Bankruptcy Court to order its dismissal through the liquidating trustee. *In re Tidwell,* 19 B.R. 846 (E.D.Va.1982). Secondly, as a separate and independent ground for upholding this aspect of the plan, the Court notes that, upon the remand of this cause and upon the request of the appellants, the Bankruptcy Court performed a cost/benefit analysis of the value of this lawsuit to the debtors' estates, and concluded that its value was nil. This determination provides additional support for the inclusion in the confirmed plan of reorganization of the directive to the liquidating trustee to dismiss the District Court action.

As a further basis for this ruling, evidence adduced at a post-remand hearing held on January 18, 1986 showed that certain releases previously signed by the debtors effectively barred them from pursuing their civil action under principles of collateral estoppel. The Bankruptcy Court was within the scope of its authority in making this determination, as the debtors' right to pursue this action was a matter concerning the administration of the estates, and/or a counterclaim by the estate against persons filing claims against the estate, and/or confirmations of Plans, and/or other proceedings affecting the liquidation of the assets of the estate, etc., and therefore constituted a "core proceeding". 28 U.S.C. § 157(b)(2)(A), (C), (L), and (O).

### (2) The Valuation of the Property In The Debtors' Estates

Appellants have objected throughout this appeal to the valuation assigned by the Bankruptcy Court, through confirmation of the Bank's plan, to the realty, improvements and FF & E which constitute

---

MCLP, the recipient of these loan proceeds. *See* Page 23, *infra,* with regard to further or future

actions open before the United States Bankruptcy Court regarding these loans.

the Miami Center property. The appellee has contended throughout that the valuation contained in the confirmed plan is the correct one; i.e., $255,600,000. (Order on Remand, ¶ No. 51). The value proposed by the appellants for the property is $275,000,-000.

The Bankruptcy Court devoted a portion of its January 18, 1985 post-remand hearing to the issue of valuation, and heard testimony from appraisers hired by both sides who essentially defended the appraisals cited above. On the basis of such testimony, as well as the formal appraisals upon which its initial determination was made, the Bankruptcy Court confirmed the original valuation figure of $255,600,000. This Court has reviewed the record evidence and has received written as well as oral argument on this issue. In light of such review, this Court concludes that the finding of the Bankruptcy Court as to the value of the Miami Center property was not clearly erroneous, and therefore will not be disturbed as a result of this Court's action.

### (3) *The Priority of Claims Based On Mechanics' Liens*

In their initial brief on appeal, the debtors/appellants challenged the classification of certain claims filed by mechanics and materialmen who had furnished the Miami Center. In addition to the fact that the appellants in the instant appeal lack standing to raise those objections, events have occurred through the implementation of the confirmed plan of reorganization which render this issue on appeal moot; i.e., that all of these Class 4 claims have been paid by the liquidating trustee.

### (4) *Unfair Classification of Certain Unsecured Creditors*

This previously asserted issue on appeal suffers from the identical infirmities discussed at paragraph (3), *supra.* First, the creditors allegedly injured by this mis-classification are not parties to this appeal. Second, the liquidating trustee has likewise paid out all of these Class 6 claims (or reserved the funds to do so) which were the subject of this objection to the plan.

### (5) *Amendment to the Plan of Reorganization Without Issuance of Disclosure Statements or Hearing*

■ In the last of their original issues on appeal, the debtors objected to the fact that late modifications to the Bank's Reorganization Plan were adopted shortly before entry of the Confirmation Order. These modifications (CP 564, 614, 709c, and 854) consisted of stipulations and amendments to the plan as filed. The purpose of these modifications was to provide for a trustee's certificate to repay the Bank of New York for any outlay required to acquire the FF & E which was the subject of the "A" and "B" leases. The Bankruptcy Court concluded (Order on Remand, ¶ No. 81) that these modifications did not prejudice the debtors, and that since the plan had been approved by the requisite number of creditors, disclosure to those classes which had rejected the plan was not required by 11 U.S.C. § 1127.

This Court agrees with the Bankruptcy Court's conclusion that the adoption of amendments to the plan of reorganization subsequently confirmed by that court did not violate the applicable provision of the Bankruptcy Code, did not prejudice these appellants, and therefore does not constitute a basis for reversing the Confirmation Order.

### VIII. CONCLUSION

Having painstakingly reviewed the record in this appeal, the voluminous briefs, appendices and other submissions of counsel for the parties, having heard extended oral argument again on the merits of the appeal on March 10, 1986, having considered the Order on Remand entered by the Bankruptcy Court, the entire record herein, and being otherwise fully advised in the premises, it is

ORDERED and ADJUDGED that the Confirmation Order entered by the Bankruptcy Court on August 8, 1985, as amended by the entry of that court's Order on

Remand on January 29, 1986, is hereby AFFIRMED; and thereupon, the Order approving Substantive Consolidation is likewise AFFIRMED.

AFFIRMED.