See also, Bkrtcy., 68 B.R. 203.

**In re HOLYWELL CORPORATION, et al., Debtors.**

**Bankruptcy No. 84–01590–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

March 20, 1987.

---

Fred H. Kent, Jr., Carlton, Fields & Kent, Jacksonville, Fla., for debtors.

Irving M. Wolff, Holland & Knight, Miami, Fla., for Liquidating Trustee.

Vance E. Salter, Steel Hector & Davis, and S. Harvey Ziegler, Kirkpatrick & Lockhart, Miami, Fla., and Thomas F. Noone, Emmet Marvin & Martin, New York City, for Bank of New York.

Raymond Bergan, Williams & Connolly, Washington, D.C., for Miami Center Limited Partnership.

John W. Kozyak, Kozyak, Tropin & Throckmorton, Miami, Fla., and Albert I. Edelman, Parker, Chapin, Flattau & Klimpl, New York City, for O & Y Equity Corp.

Scott D. Sheftall, Floyd Pearson, Richman Greer Weil Zack & Brumbaugh, P.C., Miami, Fla., for Miami Center Joint Venture.

## ORDER ON DEBTORS' MOTIONS FOR PAYMENT OF THEIR "SUPER-PRIORITY" CLAIMS

THOMAS C. BRITTON, Chief Judge.

In January, February and April, 1985, these five related chapter 11 debtors obtained permission under 11 U.S.C. § 364(c) to borrow money to meet operating emergencies. The debt was secured by giving the lenders priority administrative liens. (C.P. Nos. 313, 404 and 492). A total of $4,717,404 was borrowed to complete construction of the Miami Center, pay property taxes, and pay other operating expenses. About $5.5 million is presently owed upon these obligations, which accrue interest at the rate of $1,113 a day.

A few months later, in August 1985, a liquidating plan was confirmed by this court (C.P. No. 906) and a liquidating trustee was directed to liquidate the debtors' estates and discharge all obligations, including these. There are some 400 creditors with claims of $350 million and the trustee has not yet completed his task. The protracted and costly delay has resulted from still pending appeals of this court's orders and from litigation pending in non-bankruptcy courts between these debtors and many of their major creditors over the amounts owed.

The trustee reported at this hearing that if all existing court orders remain undisturbed, he will have sufficient funds to pay all remaining claims in full with interest, including these claims. However, because of the present uncertainties and contingencies, the issues here today (and a number of others) remain hotly contested. The debtors, a non-debtor subsidiary (Twin), a creditor affiliated with the debtors (MCJV), the debtors' major creditor (BONY) and the trustee have all argued this issue. (C.P. Nos. 1506, 1516, 1542, 1544, 1553, 1554, 1554a and 1556).

The lender/movants, Holywell and Gould (two of the five related debtors) and Twin (a wholly-owned subsidiary of the debtor Holywell), want immediate payment of the $5.5 million due them, together with a declaration that the money is not subject to any contingent claim of the trustee.

BONY opposes the motions. It argues that movants' claims are subordinate to the unliquidated class 7 claim of MCJV, which totals $14.4 million, and that the repayment would be owned by the trustee and would, therefore, be a meaningless "wash" transaction. The affiliated creditor, MCJV, and the trustee, neither of whom is directly affected, support the movants. BONY's objections are not persuasive.

■ The reimbursement priority granted to these three lender/movants in the 1985 orders is unambiguous. The following pertinent paragraph appears in each order:

"The loan to Miami Center Limited Partnership shall be secured by a lien on the assets of Miami Center Limited Partnership which shall be senior to the lien of all other creditors, except the lien of the Bank of New York, and shall have priority over the payment of any and all administrative expenses of Miami Center Limited Partnership." [1]

The three loans are to be paid as soon as (a) the lien of the Bank of New York is fully satisfied and (b) the assets of *Miami Center Limited Partnership* (not the assets of the subsequently consolidated five debtors) are sufficient to meet the obligation.

The original lien of the Bank of New York as it then existed and as it was then envisioned was fully satisfied by the trustee's sale in October 1985 of the Miami Center property to the Bank's nominee.[2]

The parties did not then anticipate, much less intend, that this provision include the Bank's subsequent lien created by the July 30, 1985 Second Amendment to the Amended Plan (C.P. No. 479). In that subsequent transaction, the Bank agreed to fund, up to a limit of $14,417,679, any shortage in the trustee's ability to pay the MCJV lease claim after it has been finally settled or adjudicated, which has not yet happened. The Bank will then get as security a trustee's certificate which will be an administrative claim (class 1):

"secured by, all assets of the debtors' estates after payment or provision has been made for all other Class 1 claims ..." (Bank's Notice of Filing of Second Amendment, C.P. No. 854, ¶ 2).

It is clear that the Bank's subsequently acquired lien for its contingent advance to the trustee is *subordinate* to the movants' administrative claims. Therefore, neither the Bank nor the trustee has any present or potential claim based upon this transaction which is superior to movants' claims.

■ The Bank also argues that the substantive consolidation of the five estates, which was provided in the plan confirmed in August 1985, extinguished these debtor claims. The plan, which must be strictly construed against its proponent, the Bank, makes no explicit provision for this result. It was not suggested by the Bank in the Disclosure Statement or otherwise before confirmation. Movants' claims and their repayment are *post-petition* debts and assets. There is no presumption that consolidation embraced post-petition transactions and thus nullified this court's post-petition orders. On the contrary, the liquidating trust created by the plan includes only § 541(a) prepetition assets. I reject the Bank's interpretation of the consolidation provision.[3]

■ The Bank argues, finally, that the subordination of claims of creditors affiliated with the debtors to class 8, behind all other creditors including the class 7 claim of MCJV, requires that payment of movants' post-petition claims to Holywell and Twin (who are affiliated creditors) is subordinated to payment of class 7 prepetition debt. I reject the Bank's interpretation of the subordination provision for the same reason I have rejected its interpretation of the substantive consolidation provision. If

1. The differences in the three variants of this paragraph are inconsequential.

2. The district court reached this conclusion in its affirmance of this court's confirmation order. *Holywell Corporation, et al., v. Bank of New York,* 59 B.R. 340, 346 (S.D.Fla.1986).

3. The district court reached this conclusion in its affirmance of this court's confirmation order. *Holywell Corporation, et al., v. Bank of New York,* 59 B.R. 340, 347 (S.D.Fla.1986).

the Bank intended by this provision to subordinate post-petition claims and thus nullify this court's three earlier orders, it should have revealed that intention explicitly.

I have not overlooked the Bank's argument that since the money used by movants to make the loans at issue here came from cash collateral pledged to payment of the Bank's original lien, rather than from an outside source, it is inappropriate or implausible that the reorganized debtors now be accorded a claim to repayment of those loans superior to the Bank's claim. The short answer to this argument is that the Bank neither demanded nor received a continuing lien as to these funds. Quite possibly it failed to do so because it hoped for reversal of this court's adverse "true-lease" ruling and because it knew it would have to make these operating advances itself, if the debtors did not, in order to preserve its collateral. Whatever the reason, it failed to retain its lien after its *original* debt was satisfied.

The trustee is authorized and directed to pay these claims if and when the proceeds of the liquidation of the assets of MCLP are sufficient to meet these priority obligations. I am not now aware of any present or potential claim which the trustee may have against the repayment proceeds.