In re PERAMCO INTERNATIONAL, INC., Debtor.

Stuart, L.L.C., Appellant,

v.

First Mount Vernon Industrial Loan Association, Appellee.

No. Civ.A. 99–1085–A.
Bankruptcy No. 97–13216–MVB.
Adversary No. 98–1078.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 4, 2000.

Spencer Dean Ault, Johnson, Young & Ault, PC, Leesburg, VA, for Plaintiff.

James M. Towarnicky, Towarnicky & Nissen, Springfield, VA, for Defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before us is an appeal from the bankruptcy court. The tortured history of this nine year litigation centers on two individual debtors and a corporation. Tom and Tooran Shadmand, the individual debtors, are husband and wife and the sole shareholders of Peramco International, Inc. ("Peramco"). The Shadmands and Peramco, in turn, are the sole shareholders of Shadmand Enterprises, Inc.

In 1986, the Shadmands and Peramco borrowed $250,000 from McLean Bank. The loan was evidenced by a promissory note signed by both the Shadmands and Peramco on October 10, 1986. *See* Jt.App. The Note included interest on the unpaid balance based on a "fluctuating" rate equal to the McLean Bank rate plus 3%. The borrowers agreed to pay late charges of 4% for any overdue installments and collection fees equal to 25% of the Note's unpaid balance. McLean Bank took a security interest in several acres of undeveloped Fairfax County real estate which Peramco had owned since the 1970's. This land was known as the Stuart Road property. Ownership of this Note eventually passed to the FDIC, which later assigned it to First Mount Vernon Industrial Loan Association (FMV), the appellee.

In 1988, Shadmand Enterprises, Inc. borrowed $400,000 from Sovran Bank. The Shadmands personally guaranteed this Note, which was secured by a second-lien deed of trust on the same Stuart Road property. After passing through various financial institutions, the Shadmand Enterprises Note was finally assigned to appellant Stuart, L.L.C. ("Stuart"). Both notes are in default.

In 1990, Peramco filed its first petition under Chapter 11 of the Bankruptcy Code

to stop foreclosure on Peramco's FMV Note. No plan was ever approved, leading the bankruptcy court to dismiss the bankruptcy proceeding in 1995 *sua sponte*, for inactivity. While Peramco's first petition was pending, the Shadmands filed for protection under Chapter 11 in 1992. This petition was never consolidated with the Peramco bankruptcy proceeding. In February 1994, the bankruptcy court confirmed the Shadmands' Fifth Amended Plan ("the Plan"). The Plan listed FMV's predecessor, the FDIC, as an unsecured creditor of the Shadmands which was entitled to take the face amount of its claim, that is the $250,000 value of the Peramco Note, without interest. The FDIC did not contest this decision, nor did any other party protest the Plan. In April 1996, the court *sua sponte* dismissed the Shadmands' bankruptcy proceeding for failure to file a closing statement.

On September 9, 1996, the Shadmands filed a second Chapter 11 petition. A few days later, Nationsbank, Stuart's predecessor, filed an adversary proceeding to determine the propriety of FMV's lien on the Stuart Road property. FMV moved to dismiss that complaint but the court continued the motion until after foreclosure of the property. Shortly thereafter, in October 1996, FMV filed a motion to annul the automatic stay to enable it to pursue foreclosure on the property, arguing that the Stuart Road property was not part of the Shadmands' bankruptcy estate. In response to this motion, the debtors entered a consent order in which they agreed to make protective payments equal to the monthly interest due on Peramco's FMV Note. Nevertheless, the debtors defaulted again. FMV responded by re-noticing its foreclosure action against the property on May 1, 1997.

The anticipated foreclosure was stayed when Peramco filed its second Chapter 11 petition on April 30, 1997. In May 1997, FMV filed a motion to terminate or annul the automatic stay of its foreclosure action, arguing that Peramco's bankruptcy petition was filed in bad faith. FMV contended that the Stuart Road property was only part of the Shadmands' bankruptcy estate and, therefore, should not be included in the Peramco estate. The bankruptcy court rejected those arguments and ordered Peramco to make monthly protection payments to FMV. In July 1997, FMV made a new motion to terminate or annul automatic stay of its foreclosure action due to Peramco's failure to make timely payments. The stay was terminated in October 1997. On January 20, 1998, Peramco and FMV stipulated to the amount of FMV's lien as $565,000, and agreed that Peramco could pay off the lien in a lesser amount under certain conditions.

In September 1997, the bankruptcy court held that FMV's interest in the Shadmands' estate was solely as an unsecured creditor. In January 1998, FMV and the Shadmands jointly moved to dismiss the Second Shadmand Case. Amresco, appellant's predecessor, objected to this motion.[1] In June 1998, the second Shadmand petition was dismissed, along with the adversary proceeding. On April 3, 1998, the Stuart Road property was foreclosed pursuant to the FMV lien. FMV won the property with a bid of $525,000. FMV and Stuart now contest how those proceeds should be distributed between them.

## DISCUSSION

The issue on appeal is whether, as a matter of law, FMV is bound by the Fifth Confirmed Plan from the Shadmands' first bankruptcy proceeding. The Plan provided:

> The claim by the FDIC [predecessor-in-interest to FMV] is secured by a consensual first deed of trust between Peramco International, Inc., a corporation wholly owned by Debtors, and personal guaran-

---

1. Stuart, L.L.C. is successor-in-interest to Amresco New England II, L.P., which in turn is successor-in-interest to Nationsbank, N.A., successor-by-merger to Sovran Bank, N.A.

tee of debtors, is impaired. The approximate principal amount of such lien is $250,000.00. Debtors will pay Creditor the full principal of any allowed claim without interest from the Distribution Account. Debtors will sell such property or property free and clear of all liens and Claimant's lien would attach to the proceeds of the sale. Sale proceeds would be distributed to the Distribution Account and then distributed to the creditor.

(Debtor's 5th Amended Plan of Reorganization at 15).

The parties agree that if FMV is bound by the Plan, $250,000 of the foreclosure sale proceeds will be distributed to FMV, and the remaining proceeds will be distributed to Stuart. If FMV is not bound, then all proceeds will go to FMV because it has the first lien on the property and none of that lien has been limited in any bankruptcy proceeding.

The bankruptcy court found that FMV is not bound by the Plan, and granted summary declaratory judgment in favor of FMV, ordering:

declaratory judgment is granted FOR First Mount Vernon and against Stuart to the extent that First Mount Vernon's lien attributable to its first lien deed of trust encumbering the property . . . without dimunition as a result of the Confirmed Plan issued in the case of Tom and Tooran Shadmand, and the foreclosure proceeds of the Real Property are to be disbursed without reference whatsoever to the Plan.

Summ.J. Order at 1–2.

### A. Standard of Review

Because the parties stipulated to the facts, both parties concede that this appeal calls for *de novo* review. Therefore, our role is to determine whether FMV is entitled to judgment as a matter of law on the basis of the factual record to which the parties do not dispute.

FMV argues that the bankruptcy court should be affirmed on the basis of Section 1141 of the Bankruptcy Code, which provides:

Except as provided in subsection (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

■ FMV argues that in the Shadmands' first bankruptcy proceeding, in which the Plan was issued, the only "debtor" was the Shadmands, not Peramco. To regard Peramco as the debtor, especially while Peramco's separate bankruptcy was pending, would result in impermissible joinder of the two bankruptcy proceedings. Because the Stuart Road property was owned only by Peramco, the Plan could not dispose of it unless the two bankruptcy proceedings had been consolidated. We believe FMV is correct. As the record clearly shows, while the Peramco and Shadmands cases were pending, no party moved for consolidation. Moreover, the bankruptcy court did not order consolidation nor did it confirm a reorganization plan specifically declaring substantive consolidation. Nevertheless, Stuart contends that we should regard the Peramco and Shadmands cases as substantively consolidated because Peramco was the alter ego of the Shadmands. Stuart also argues that because the FDIC did not object to being listed as a secured creditor in the Shadmands' bankruptcy proceeding, it waived arguing that the court had not consolidated the proceedings.

■ We decline to find for Stuart on this issue for two reasons. First, Stuart has not identified, nor have we found, a single instance of an appellate court recognizing substantive consolidation unless the bankruptcy court had expressly ordered

it.[2] Second, although the power of bankruptcy courts to substantively consolidate is widely acknowledged,[3] it is regarded as an extreme measure that should be used sparingly.[4] To that end, several factual tests, varying in complexity, have developed among the circuits.[5] All tests require the bankruptcy court to make extensive evidentiary findings before determining the consolidation issue.[6] This type of factual inquiry is completely absent from the records of the Peramco and Shadmands proceedings.

■ Because no such findings were made, we decline to find that the bankruptcy court implicitly consolidated the two proceedings. Therefore, FMV is correct that the property at issue never came within the Shadmands' bankruptcy estate and the court could not dispose of anything but the Shadmands' personal guarantee.

2. *See, e.g., Eastgroup Properties v. Southern Motel Assoc., Ltd.,* 935 F.2d 245 (11th Cir. 1991) (affirming bankruptcy court's order of substantive consolidation, which it had issued after conducting a hearing and making findings); *In re Continental Vending Machine,* 517 F.2d 997 (2d Cir.1975) (appeal from bankruptcy court approving reorganization plan calling for consolidation of bankruptcy proceedings); *Holywell Corp. v. Bank of New York,* 59 B.R. 340 (S.D.Fla.1986) (appeal from order approving substantive consolidation of debtor's estates).

3. Although the Bankruptcy Code does not provide for it, many courts have acknowledged the equitable power of bankruptcy courts to consolidate cases. It allows bankruptcy courts to disregard separate corporate entities in order to reach assets to satisfy the debts of a related corporation. *In re Continental Vending Machine Corp.,* 517 F.2d 997, 1000 (2d Cir.1975); *see also Eastgroup Properties v. Southern Motel Assoc., Ltd.,* 935 F.2d 245, 248 (11th Cir.1991). This is not merely procedural. The assets and liabilities of individual debtors are combined and inter-debtor claims are eliminated, unless otherwise authorized by the court. *Holywell Corp. v. Bank of New York,* 59 B.R. 340, 347 (S.D.Fla.1986); *In re Creditors Serv. Corp.,* 195 B.R. 680, 689 (Bankr.S.D.Ohio 1996).

4. The consolidation power *is to be used* sparingly, lest it lead to unfair treatment of creditors who have dealt solely with the corporation having a surplus, to the benefit of creditors who have dealt solely with the related entities having deficiencies. *In re Continental Vending Machine,* 517 F.2d at 1001. As the Second Circuit observed, bankruptcy courts *should* proceed with caution when consolidating cases because:

> [C]onsolidation in bankruptcy is a 'measure vitally affecting substantive rights,' the inequities it involves must be heavily outweighed by practical considerations such as the accounting difficulties (and expense) which may occur where the interrelationships of the corporate group are highly complex, or perhaps untraceable.

*In re Continental Vending Machine,* 517 F.2d at 1001 (citations omitted); *see also Eastgroup Properties v. Southern Motel Assoc., Ltd.,* 935 F.2d 245 (11th Cir.1991) (court must make searching inquiry when determining whether to grant substantive consolidation); *Holywell Corp. v. Bank of New York,* 59 B.R. 340, 346 (S.D.Fla.1986) (on appeal, bankruptcy court's consolidation must be examined studiously due to the seemingly harsh results it may produce); *In re Creditors Serv. Corp.,* 195 B.R. 680, 689 (Bankr.S.D.Ohio 1996) (substantive consolidation is "extreme remedy").

5. The tests range from a two-sided balancing test, to a more complex seven-factor test requiring specific factual findings. *In re Lease–A–Fleet, Inc.,* 141 B.R. 869, 871–72 (Bankr.E.D.Pa.1992) (discussing three tests for determining when to consolidate); *Holywell Corp. v. Bank of New York,* 59 B.R. 340 (S.D.Fla.1986) (conducting seven factor objective inquiry into the interrelationships of the entities to be consolidated, factors include "the presence or absence of consolidated financial statements," and "the existence of parent and intercorporate guarantees on loans"); *In re Creditors Serv. Corp.,* 195 B.R. 680, 689 (Bankr.S.D.Ohio 1996) (same). Despite the variations, all tests elaborate the "basic criterion" by which to evaluate a proposed substantive consolidation: "whether 'the economic prejudice of continued debtor separateness' outweighs 'the economic prejudice of consolidation.'" *Eastgroup Properties v. Southern Motel Assoc., Ltd.,* 935 F.2d 245, 249 (11th Cir.1991) (citations omitted).

6. *See, e.g., In re Creditors Serv. Corp.,* 195 B.R. 680 (Bankr.S.D.Ohio 1996) (making findings and ordering substantive consolidation); *In re Lease–A–Fleet, Inc.,* 141 B.R. 869 (Bankr. E.D.Pa.1992) (making findings and denying motion for substantive consolidation); *In re Tureaud,* 45 B.R. 658 (Bankr.N.D.Okla.1985) (making findings and ordering substantive consolidation).

**318**

### B. Section 1141(a) and Collateral Estoppel

Stuart, also relying on Section 1141(a), argues that FMV is collaterally estopped from attacking the Plan from the Shadmands' first bankruptcy proceeding, which limited FMV's share of the foreclosure sale proceeds to $250,000, because FMV is bound by the terms of the Plan, and cannot challenge them in a later proceeding.

Stuart notes that Exhibits D and E of the Plan list FMV's lien in the Shadmands' estate as secured and contends that the Plan addressed the Shadmands' stock in Permaco by liquidating Peramco's assets as assets of the Shadmands. Stuart cites *Maryland v. Antonelli Creditor's Liquidating Trust*, 123 F.3d 777 (4th Cir.1997), and *Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251 (4th Cir.1997), as further support that FMV is collaterally estopped from attacking the Plan.

In *Antonelli*, Montgomery and Baltimore Counties sought to recover county transfer and recordation taxes from a liquidating trust that transferred three parcels of property to third party purchasers. The counties challenged provisions in the confirmed plan of reorganization entered pursuant to an earlier Chapter 11 proceeding which created the liquidating trust and exempted from state taxation transfers from the liquidating trust. The Fourth Circuit held that the counties were barred from collaterally attacking the bankruptcy court's order entering the confirmed plan. 123 F.3d at 783. Moreover, in *Spartan Mills*, the Fourth Circuit held that a creditor was collaterally estopped from re-litigating the issue of the priority of its lien after a bankruptcy court entered a final order in an earlier Chapter 11 proceeding that another bank had a first priority security interest in the same assets. The Court observed:

> The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction.

112 F.3d at 1255.

■ FMV responds that *Antonelli* and *Spartan Mills* do not apply because it is challenging the bankruptcy court's jurisdiction over its lien on the Stuart Road property. According to FMV, the bankruptcy court lacked jurisdiction to affect the assets of Peramco, a corporate debtor, through the Chapter 11 plan of the Shadmands, individual debtors. We agree. The bankruptcy court would have had jurisdiction over Peramco's assets only if the Shadmands and Peramco bankruptcies were consolidated. For the reasons stated above, we hold that they were not consolidated. Therefore, the doctrine of collateral estoppel does not bar FMV from challenging the terms of the confirmed plan.

### C. Res Judicata

Stuart argues that even if the bankruptcy court lacked jurisdiction, FMV is still barred from challenging the $250,000 limit on its claim, because res judicata principles bind FMV to the bankruptcy court's final order. It cites *In re A.H. Robins, Inc.*, 880 F.2d 694 (4th Cir.1989), a case in which the Fourth Circuit adopted the Fifth Circuit's approach to the res judicata effect of confirmed plans in bankruptcy proceedings. The Fifth Circuit set out this approach in *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987). The *Republic Supply* plaintiffs had been creditors in a previous Chapter 11 proceeding. In the later action, they were pursuing collection from a guarantor of the debtor in the earlier proceeding. The guarantor defended on the grounds that the confirmed plan, which expressly released him, and all other guarantors of the debtor, from liability was res judicata. The Fifth Circuit agreed with the guarantor, rejecting the argument that the bankruptcy court's lack of juris-

diction over debtor's guarantees precluded res judicata effect:

> We hold that, for the purposes of res judicata, the order adopting the Plan was therefore rendered by a court of competent jurisdiction since the bankruptcy court determined that it had subject matter jurisdiction and that decision was not appealed.

815 F.2d at 1053.

██ We reject Stuart's argument that *Republic Supply* and its progeny compel us to hold that, despite the bankruptcy court's lack of jurisdiction over FMV's lien on the Stuart Road property, the confirmed plan limits FMV's claim to $250,-000. *Republic Supply* is distinguishable on several important grounds. First, the parties before us are not identical to the parties who were before the bankruptcy court when the plan was confirmed. Second, the terms of the confirmed plan are unclear and ambiguous. Third, reading *Republic Supply* as Stuart advocates runs afoul of a more recent line of cases in the Fourth Circuit about the *in personam* nature of bankruptcy proceedings.

In *Republic Supply*, the Fifth Circuit organized its analysis by the four traditional elements of res judicata: identity of the parties, prior judgment by a court of competent jurisdiction, final judgment on the merits, and the same cause of action. 815 F.2d at 1051. Regarding the first element, the court observed, "[t]here is no dispute that the parties before this court and those before the bankruptcy court are identical." *Id.* In our case, the parties before us differ from those before the bankruptcy court when the Plan was confirmed. Currently before the court are Peramco's creditors, FMV and Stuart. When the plan at issue was confirmed, FMV and Stuart appeared as creditors and the debtor was the Shadmands, not Peramco. Section 1141(a) suggests that an apparent difference in semantics has

relevance for res judicata. It provides that a confirmed plan binds "the debtor ... and any creditor." The Bankruptcy Code never indicates that non-party debtors, such as Peramco, and their creditors are bound by a confirmed plan. To find otherwise would be especially unfair in this case, because Peramco's first bankruptcy was pending when the Shadmands' plan was confirmed, and it is reasonable and understandable if FMV's predecessor-in-interest assumed that its lien against Peramco's property would be addressed in the Peramco bankruptcy, not the Shandmands' bankruptcy. (*See* Jt.Stip. of Mat. Fact at ¶¶ 9, 13, 17, 21.) Moreover, FMV twice tried to pursue the Peramco debt in the Shadmands' bankruptcy and was denied this right by the court. (*See Id.* at ¶¶ 41 (bankruptcy court rejected FMV's argument that the Stuart Road property was part of the estate in the second Shadmands bankruptcy and that the automatic stay issued pursuant to the second Peramco bankruptcy should therefore be lifted), 46, 47 (bankruptcy court denied FMV's motion in the second Shadmands bankruptcy to abandon the Permaco stock, ruling that FMV had no interest in the Shadmands' estate other than as an unsecured creditor).)

The *Republic Supply Co.* court twice observed that its holding was justified by the unambiguous language of the confirmed plan, presumably because the language was adequate to put the parties on notice of the changing status of the guarantors. 815 F.2d at 1050, 1054 ("we are not confronted with an issue that requires judicial interpretation of uncertain terms of a Plan; the Plan provision at issue is clear and unambiguous and its intended effect undisputed"). That is not the case here. A central ambiguity in the Shadmands' Plan is that, under the defined terms of the Plan, FMV's predecessor-in-interest is not listed as a secured creditor,[7]

---

7. Secured creditors: All creditors who hold a lien, security interest, or other encumbrance that has been properly perfected as required

by law with respect to property owned by Debtors [the Shadmands] and is not subject to

yet elsewhere in the Plan, it is labeled as secured creditor.[8] Also, the Plan is unclear:

> The claim by the FDIC [FMV's predecessor-in-interest] is secured by a consensual first deed of trust between Peramco International, Inc., a corporation wholly owned by Debtors, and personal guarantee of debtors, is impaired. The approximate principal amount of such lien is $250,000. Debtors will pay Creditor the full principal of any allowed claim without interest from the Distribution Account. Debtors will sell such property or property free and clear of all liens and Claimant's lien would attach to the proceeds of the sale. Said proceeds would be distributed to the Distribution Account and then distributed to the creditor.

(Debtor's Fifth Amended Plan of Reorganization at 15.) The first sentence of this provision is ungrammatical, and seems to be missing a word. The provision calls for the Shadmands to sell the property, something they would not have the power to do because they did not own it, Peramco owned it. It also instructs that the property would be sold free and clear of all liens, a legal impossibility.

 The most troubling aspect of Stuart's position is that it runs afoul of a recent line of cases in the Fourth Circuit about the *in rem* character of liens during bankruptcy. In *In re Deutchman*, 192 F.3d 457 (4th Cir.1999), the debtor argued that his confirmed Chapter 13 plan was res judicata as to the IRS's lien against his property. Although the IRS had an allowed secured claim of over $172,000, the plan called for substantially reduced payments from the debtor to the IRS. The debtor contended that upon completion of these payments, debtor would be free of the IRS lien. The court rejected that argument, observing:

> avoidance under the Bankruptcy Code or non-bankruptcy law.
> (Debtor's Fifth Amended Plan of Reorganization at 2.)

As a general rule, liens pass through the bankruptcy process unaffected. This is because a 'bankruptcy discharge extinguishes only in personam claims against the debtor(s), but generally has no effect on an in rem claim against the debtor's property.' In order to extinguish or modify a lien, the debtor must take some affirmative step toward that end. As we have observed in the past, 'unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation.'

*Id.* at 460 (4th Cir.1999) (quoting *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 92 (4th Cir. 1995)). The court went on to explain its conclusion that the debtor did not take a sufficient affirmative step to modify or extinguish the IRS's liens:

> First, if we assume that Deutchman [the debtor] intended to challenge the validity or existence of the IRS's liens, he failed to effectively do so because he sought no preconfirmation adversary hearing. Second, Deutchman filed no objection to the proof of claim filed by the IRS, sought no valuation ... nor otherwise attempted to modify the lien in any affirmative way. Instead, Deutchman attempted to 'provide for the liens' and obtain a favorable result by merely camouflaging his treatment of the IRS's liens on his plan.

*Id.*

It is true that the bankruptcy at issue in *Deutchman* was a Chapter 13 proceeding, in contrast to the Chapter 11 proceeding in this case. However, the court's language about the *in rem* nature of liens and the *in personam* nature of bankruptcies lends to general application. Inherently, the Shadmands' bankruptcy proceeding dealt with the assets and liabilities of the Shadmands.

8. (Debtor's Fifth Amended Plan of Reorganization at Ex. D.)

The lien which Stuart insists was altered by that proceeding was attached to property owned by Peramco. To satisfy *Deutchman*, if the parties to the Shadmands' bankruptcy sought to modify the lien on Peramco's property, they were required to take sufficient affirmative steps, rather than camouflaging their treatment of that lien with an ambiguous plan provision. At the very least, a clearer provision in the plan would have put FMV on notice that third parties in a separate bankruptcy proceeding were tinkering with its lien on Peramco's property.

### CONCLUSION

For the foregoing reasons, the Bankruptcy Court's grant of summary declaratory judgment to FMV and denial of summary declaratory judgment to Stuart is AFFIRMED.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.