**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SPARTAN MILLS,
Plaintiff-Appellant,

v.                                                                          No. 96-1760

BANK OF AMERICA ILLINOIS,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
William B. Traxler, Jr., District Judge.
(CA-95-1552-7-21)

Argued: January 30, 1997

Decided: May 6, 1997

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Murnaghan and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Bentford E. Martin, BLAIR, CONAWAY, BOGRAD &
MARTIN, P.A., Charlotte, North Carolina, for Appellant. Thomas
Sam Kiriakos, MAYER, BROWN & PLATT, Chicago, Illinois, for
Appellee. **ON BRIEF:** David M. Grogan, BLAIR, CONAWAY,
BOGRAD & MARTIN, P.A., Charlotte, North Carolina, for Appel-
lant. John J. Voorhees, Jr., MAYER, BROWN & PLATT, Chicago,
Illinois; A. M. Quattlebaum, Jr., NELSON, MULLINS, RILEY &
SCARBOROUGH, L.L.P., Greenville, South Carolina, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

Spartan Mills filed this action against Bank of America Illinois in the District of South Carolina to enforce a state statutory textile processor's lien against the sale proceeds of certain equipment and inventory of Dash Industries, Inc., a debtor in bankruptcy. Spartan Mills claims to have a first priority position in those proceeds. The equipment and inventory had been sold by order of a Florida bankruptcy court and the proceeds paid to Bank of America, Dash Industries' bank, pursuant to the bankruptcy court's finding that the bank had a first priority security interest in the assets. Bank of America contends that the bankruptcy court's final order determining that its lien had priority in Dash Industries' assets now precludes Spartan Mills, under principles of res judicata, from relitigating that issue in this action. The district court agreed and entered summary judgment in Bank of America's favor. We affirm.

I

Dash Industries, a Florida apparel manufacturer and distributor, retained Spartan Mills to make sheet metal "screens" for transferring Dash Industries designs onto fabric and to manufacture the fabric itself. In the spring and summer of 1993, Dash Industries owed Spartan Mills over $600,000 for these services. To secure payment of Dash Industries' outstanding debt with Spartan Mills, Spartan Mills asserted a first priority, possessory textile processor's lien pursuant to S.C. Code § 29-15-70 in the screens, related equipment, and fabric in its custody.

In May 1993, Dash Industries filed a Chapter 11 bankruptcy proceeding in the Bankruptcy Court for the Southern District of Florida. As part of its reorganization plan, Dash Industries sought to finance its ongoing operations through a continuing arrangement with Bank of America Illinois, its bank, to whom Dash Industries was already indebted in an amount exceeding $1.5 million. Bank of America claimed a first priority lien in all of Dash Industries' assets to secure repayment of outstanding loans. By order dated June 11, 1993, the bankruptcy judge authorized Dash Industries to continue to borrow

2

from Bank of America and limited Dash Industries' use of Bank of America's cash collateral. To provide Bank of America sufficient security to continue financing Dash Industries, the bankruptcy judge recognized the bank's "lien against and security interest in all presently owned and hereafter acquired property, assets, and rights, of any kind or nature, of the Debtor, wherever located." The court also ordered provisionally that the lien and security interest "shall be a first and prior lien on and security interest in" the assets of Dash Industries. The bankruptcy court expressly stated in its order, however, that it was not <u>then</u> determining the "validity, priority, or extent of" Bank of America's pre-petition rights or lien upon Dash Industries' assets. Rather, it was notifying all creditors that, if any creditor wished to challenge "the validity or priority of [Bank of America's] claims or liens," it was required to file a motion or other pleading doing so by August 15, 1993. The court warned that if no motion or pleading were so filed, the first priority lien position of Bank of America would be established "as a finding of this Court and . . . shall no longer be provisional." The bankruptcy court's June 11 order included the following admonition:

> Consistent with the foregoing, any objection to the claims or liens of [Bank of America] and any adversary proceeding or other action alleging an affirmative claim on behalf of [Dash Industries'] bankruptcy estate for relief in damages or otherwise against [Bank of America] must be brought on or before August 15, 1993 <u>or be otherwise barred</u> .

(Emphasis added). Spartan Mills received a copy of this June 11 order, and, during this same period, its counsel, on his own application, became the representative of the unsecured creditors committee. Despite the bankruptcy court's order that Bank of America would be given a first priority lien on Dash Industries' assets unless an objection or adversary proceeding were commenced by August 15, 1993, Spartan Mills neither made any objection nor filed any motion, pleading, or adversary proceeding by that date.

After the closing date for filing objections or adversary proceedings, the bankruptcy judge entered an order dated August 24, 1993, directing the court-appointed examiner to sell all of Dash Industries' assets "free and clear of liens in parcel or bulk with liens attaching

3

to the proceeds." And following the sale of the assets to Cone Mills for $810,000 -- netting $781,075 to the bankruptcy estate after payment of expenses -- the bankruptcy court entered an order of September 2 approving the sale "free and clear of liens, with liens to attach to proceeds," subject to objection if filed by September 15, 1993. Spartan Mills received a copy of these orders also. Although it did not object to the sale, on September 15, 1993, Spartan Mills did file an adversary proceeding in the bankruptcy court to declare that its textile processor's lien was valid and prior to any other lien. The docket sheet discloses, however, that Spartan Mills took no further steps to prosecute its adversary proceeding.

On September 20, 1993, the bankruptcy court converted Dash Industries' bankruptcy from Chapter 11 to Chapter 7. Also on that date, Dash Industries sent Spartan Mills a draft order approving the sale, which provided that the sale proceeds were to be held in escrow "pending further order of this Court." Three days later, however, Bank of America filed a limited objection to the draft order that requested immediate disbursement to Bank of America of its share of the sale proceeds "[p]ursuant to this Court's June 11, 1993, Order." Bank of America served a copy of the objection on Spartan Mills.

Finally, on September 24, 1993, the bankruptcy court approved the sale of assets to Cone Mills "free and clear of liens." Its order found that Bank of America "holds a valid and duly perfected security interest in all of [Dash Industries'] assets" and that "[n]o other creditors hold valid and duly perfected security interests in the assets." The court further directed that the proceeds of the sale be paid to Bank of America in satisfaction of its lien at the closing date, October 15, 1993. Spartan Mills acknowledges that it was served directly with a copy of this order, receiving it on September 27, 1993. Its attorneys contend, however, that they did not receive a copy of the court's September 24 order until several weeks later, noting that, as of September 19, they no longer represented the creditors' committee.

Nevertheless, before payment of the sale proceeds was made to Bank of America, Spartan Mills negotiated and entered into an agreement with Bank of America on October 14, 1993, under which it agreed to relinquish possession of the equipment and inventory to Cone Mills so as to allow completion of the court-ordered sale. It

imposed as its condition, however, that Bank of America agree that in any litigation over the entitlement to the sale proceeds, "Spartan Mills will not be deemed to have relinquished the Property for the purposes of determining the attachments, perfection and priority of its asserted lien therein." Thereafter, the bankruptcy estate paid $781,075 to Bank of America, and two months later Spartan Mills dismissed its adversary proceeding to determine its priority.

A year-and-a-half later, on May 18, 1995, Spartan Mills filed this action in the District of South Carolina seeking (1) a declaratory judgment that its lien was superior to Bank of America's lien and that, therefore, Bank of America converted its property and (2) a judgment in the amount that Dash Industries owed to Spartan Mills, plus interest. Bank of America filed a counterclaim for a declaratory judgment that the Florida bankruptcy court had previously decided the priority of liens and that Spartan Mills was now bound by the bankruptcy court's order. On cross-motions for summary judgment, the district court granted Bank of America's motion for summary judgment. The district court noted that, even if the Florida bankruptcy court erred in ordering payment of the proceeds to Bank of America without the institution of an adversary proceeding or resolution of Spartan Mills' adversary proceeding, the Florida court's order adjudicating the liens' priorities was a final order which Spartan Mills neither appealed nor challenged. Relying on Celotex Corp. v. Edwards , 115 S. Ct. 1493 (1995) (upholding a final bankruptcy court order against collateral attack), the district court concluded:

> If Spartan feels the Bankruptcy Court exceeded its jurisdiction or did not accord Spartan due process, then Spartan's remedy lies in Florida not in South Carolina. Spartan's action constitutes an improper collateral attack on the Sale Order issued by the United States Bankruptcy Court for the Southern District of Florida, and thus, the Sale Order may not be challenged in this forum.

II

The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge

5

for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and long standing. See Celotex Corp. v. Edwards , 115 S. Ct. 1493, 1498 (1995).

In Celotex, the Supreme Court barred judgment creditors from executing against the supersedeas bond of the judgment debtor's surety when such execution would have collaterally attacked the injunction of a bankruptcy court with jurisdiction, even though the creditors had proper grounds to object to the injunction. The court stated, "`persons subject to an injunctive order issued by a court with jurisdiction are expected to obey the decree until it is modified or reversed, even if they have proper grounds to object to the order.'" Id. at 1498 (quoting GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 386 (1980)). The Court observed that this rule had been applied to bankruptcy orders for more than 60 years. See Celotex, 115 S. Ct. at 1498; Oriel v. Russell, 278 U.S. 358 (1929) (holding that a bankruptcy turnover order could not be collaterally attacked in a later contempt proceeding brought to enforce it).

In this case, the Florida bankruptcy court issued an order on June 11, 1993, provisionally finding that Bank of America had a first priority lien on all of Dash Industries' assets, including its equipment and inventory. And in its orders of August 24 and September 2, the court ordered the sale of those assets free and clear of all liens, with liens to attach to the sale proceeds. Finally, on September 24, 1993, following a period which the court allowed for creditors to object, the bankruptcy court ratified the sale and ordered that the net proceeds be paid to Bank of America as lien holder enjoying a first priority position.

Spartan Mills had notice of these orders but failed to object to or appeal them. While it did file an adversary proceeding, it voluntarily dismissed it. If the bankruptcy court had jurisdiction to enter these orders, under Celotex we must consider them binding on Spartan Mills, even if they were in error, and therefore must reject this collateral attack. See Lindsey v. Ipock, 732 F.2d 619, 622 (8th Cir. 1984) ("once [the creditor] was apprised of the bankruptcy court's sale order and failed to timely appeal, he was obligated to obey these orders even if they were in error").

6

Spartan Mills contends that it is not governed by the principles of Celotex because (1) the Florida bankruptcy court did not have jurisdiction over the subject matter or over the person of Spartan Mills and (2) the bankruptcy court did not follow established procedures for voiding its lien, denying Spartan Mills the due process notice that would give preclusive effect to the bankruptcy court's orders. We will discuss these issues in order.

A

No one contends that the bankruptcy court did not have jurisdiction over Dash Industries and its assets, both to reorganize them under Chapter 11 and later to liquidate them under Chapter 7. See 28 U.S.C. §§ 157(a), 1334(b). "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate, and . . . the `related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate." Celotex, 115 S. Ct. at 1499 (internal quotations omitted). Accordingly, a district court, and derivatively the bankruptcy court, has jurisdiction over an action related to bankruptcy "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and[it] in any way impacts upon the handling and administration of the bankrupt estate." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); see also A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1002 n.11 (4th Cir. 1986) (adopting the Pacor test).

Spartan Mills contends nevertheless that the bankruptcy court had no jurisdiction to settle the private dispute between it and Bank of America over the relative priority of their liens because the distribution of the proceeds to one or the other would have no effect on the debtor's estate. Such an argument, however, ignores the fact that recognition of Bank of America's first priority position was essential to the initial reorganization and later liquidation of Dash Industries' estate. All of the corporation's Chapter 11 financing was dependent on Bank of America's first lien position, and the later sale of the estate's assets could not have been completed if a valid claim of a possessory lien had been interposed. The "determination[ ] of the

7

validity, extent, or priority of liens" is at the heart of this bankruptcy case and statutorily within the core of the bankruptcy court's "related to" jurisdiction. See 28 U.S.C. § 157(b)(2)(K). We have little difficulty in concluding that the Florida bankruptcy court had subject matter jurisdiction over all of Dash Industries' assets and any lien contest in respect to them.

It also cannot be disputed that Spartan Mills was a party to the bankruptcy proceedings in Florida. It was a creditor; it received notice of all proceedings; it served as representative of the creditors' committee; and it filed its own adversary proceeding in the case.

B

For its weightier argument, Spartan Mills contends that the bankruptcy court's departure from established procedure for adjudicating the priority of liens denied it the due process notice necessary to bind it through principles of res judicata. It argues that our decision in Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995), squarely supports its position. In Cen-Pen, we held that a confirmation order that treated Cen-Pen as an unsecured creditor of the debtor in bankruptcy could not have preclusive effect as to the validity of a lien that Cen-Pen claimed in the debtor's assets. We stated, "confirmation generally cannot have preclusive effect as to the validity of a lien, which must be resolved in an adversary proceeding." Id. at 93. We noted that inclusion of boilerplate language on page four of the debtors' proposed plan voiding liens did not, in the circumstances there, provide sufficient notice to the creditor that his lien was not being allowed to pass through the bankruptcy process intact: "The Hansons' plan nowhere mentioned or otherwise acknowledged Cen-Pen's liens, and certainly did not `provide for' treatment of the liens or full payment of the underlying claim." Id. at 94. Even though Spartan Mills cannot rely on a similar factual circumstance here, it nonetheless argues that because it was not served with notice in an adversary proceeding filed to invalidate its first priority, textile processor's lien created under South Carolina law, under Cen-Pen it is not bound by the bankruptcy court's final order distributing the proceeds to Bank of America. We think that Spartan Mills applies Cen-Pen too broadly.

While it is clear that no one instituted an adversary proceeding against Spartan Mills for the purpose of subordinating its textile pro-

8

cessor's lien, Spartan Mills itself did institute such an action, even though it did not prosecute it. But apart from its own action in filing an adversary proceeding, we believe that if Spartan Mills knew that proper bankruptcy procedure had not been followed, its remedy was to seek reconsideration from the bankruptcy court itself or to appeal to the district court in Florida and ultimately to the Eleventh Circuit. See Fed. R. Bankr. P. 8002, 9023, 9024. Under the holding of Celotex, Spartan Mills cannot allow a final order that deprives it of a lien position to stand and then hope to attack it collaterally at another time and in another forum. Both our circuit and other federal courts have barred bankruptcy parties from collateral assertions of legal claims after they fail, without reason, to object and appeal as required. See, e.g., First Union Comm. Corp. v. Nelson, Mullins, Riley, and Scarborough (In re Varat Enterprises, Inc.), 81 F.3d 1310, 1315 (4th Cir. 1996); U.S. Dep't of the Air Force v. Carolina Parachute Corp., 907 F.2d 1469, 1473-74 (4th Cir. 1990); Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks, Ltd.), 898 F.2d 1544, 1550-52 (11th Cir. 1990); cf. 11 U.S.C. § 506(d) ("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ."); 11 U.S.C. § 1141(a) ("Except [as otherwise provided] . . . the provisions of a confirmed plan bind . . . any creditor . . . ."); 11 U.S.C. § 1327(c) ("Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor . . . is free and clear of any claim or interest of any creditor provided for by the plan"). As the Supreme Court recently noted in Celotex, "It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." 115 S. Ct. at 1501 (quoting Walker v. Birmingham, 388 U.S. 307, 314 (1967)); see also Lindsey, 732 F.2d at 622 (forbidding collateral attack on an erroneous but unappealed bankruptcy order). The lien of a creditor is void if the unappealed, final order of a bankruptcy court vested with proper jurisdiction so declares regardless of the bankruptcy court's failure to adhere to normal bankruptcy procedures.

While Spartan Mills has agreed that we must apply Celotex to the extent it applies in this case, it argues that Celotex cannot be applied when the bankruptcy court denied Spartan Mills the notice required by due process.

9

Due process requires that in order for a proceeding to be accorded finality, notice must be given that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Piedmont Trust Bank v. Linkous (In re Linkous), 990 F.2d 160, 162-63 (4th Cir. 1993). In this case, Spartan Mills had that notice. During the period when its counsel represented the creditor's committee, the bankruptcy court issued an order proposing to allow Dash Industries to borrow money from Bank of America and, in exchange, to recognize Bank of America's first priority lien in all of Dash Industries' assets, consistent with Bank of America's claim for a first position in its pre-petition lending. The court ordered that persons objecting to Bank of America's first position file an objection or other pleading by a date certain or be barred from challenging its position. The court also ordered the sale of all of Dash Industries' assets, free and clear of liens, with distribution of the proceeds to Bank of America in recognition of its first position. And finally the court ratified these acts. Spartan Mills agrees that it received notice of all of these orders. And it surely cannot maintain that the orders failed to advise it that its claimed lien was being subverted. The property in which Spartan Mills had claimed a possessory lien was sold to Cone Mills free and clear of all liens, and the proceeds were distributed by court order to Bank of America in direct conflict with Spartan Mills' first lien claim. Moreover, Spartan Mills' actions in filing an adversary proceeding challenging these rulings and in negotiating a stipulation with Bank of America to help it maintain its position belie any claimed lack of knowledge.

Rather than object in the Florida bankruptcy court or appeal the bankruptcy court's orders, the record provides ample support for the conclusion that Spartan Mills made a considered decision to try to litigate its lien claim in South Carolina at another time. It pursued an agreement with Bank of America and entered into a stipulation on October 14 which would bar Bank of America from asserting Spartan Mills' lack of possession of Dash Industries' assets as a defense in any subsequent action. It thereafter voluntarily dismissed its adversary proceeding filed in the Florida bankruptcy proceeding in the face of a final order that awarded the first lien position to Bank of America. And finally during Spartan Mills' argument before the district

10

court, its counsel stated, "frankly, Spartan preferred to be in a different forum to litigate the lien statute." This is not the case where Spartan Mills was caught by surprise because of a lack of due process notice. Rather, Spartan Mills apparently determined that it would litigate its claim at a different time and in a different court. But in doing so, it left standing final orders that adjudicated its lien claim.

Respect for the orderly process of law demands that the Florida bankruptcy court's final, unappealed order be given effect. See Celotex, 115 S. Ct. at 1501 (a collateral attack on a bankruptcy order cannot be permitted "without seriously undercutting the orderly process of the law"). Accordingly, the judgment of the district court is

AFFIRMED.

11