UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: PERAMCO INTERNATIONAL,
INCORPORATED,
                                    *Debtor.*

STUART, L.L.C.,
                    *Plaintiff-Appellant,*

v.

FIRST MOUNT VERNON INDUSTRIAL
LOAN ASSOCIATION,
                    *Defendant-Appellee,*

and

PERAMCO INTERNATIONAL,
INCORPORATED,
                                    *Defendant.*

No. 00-1163

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-99-1085-A, BK-97-13216-J)

Argued: November 1, 2000

Decided: February 7, 2001

Before LUTTIG and TRAXLER, Circuit Judges, and
Alexander WILLIAMS, Jr., United States District Judge
for the District of Maryland, sitting by designation.

_____

Reversed and remanded with instructions by unpublished per curiam
opinion.

**COUNSEL**

**ARGUED:** Spencer Dean Ault, JOHNSON, YOUNG & AULT, P.L.C., Leesburg, Virginia, for Appellant. James Michael Towarnicky, JAMES M. TOWARNICKY, P.L.L.C., Springfield, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellant Stuart, L.L.C. ("Stuart") brought this adversary proceeding in bankruptcy court against appellee First Mount Vernon Industrial Loan Association ("First Mount Vernon") seeking a declaration that First Mount Vernon's interest in certain real property was limited by an order entered in a prior bankruptcy proceeding to which First Mount Vernon's predecessor-in-interest was a party. The bankruptcy court granted summary judgment to First Mount Vernon, and the district court affirmed. Stuart appeals. For the reasons set forth below, we reverse and remand.

I.

Peramco International, Inc. ("Peramco") was a Virginia corporation owned and directed solely by Tom and Tooran Shadmand (the "Shadmands"). In the 1970s, Peramco acquired real property located at 1349 Stuart Road, Fairfax, Virginia (the "Property"). In 1986, Peramco secured a loan with a first-lien deed of trust in the Property for $250,000. The promissory note secured by the first deed of trust was executed jointly by Peramco and the Shadmands individually. The first deed of trust was eventually transferred to the Federal Deposit Insurance Corporation ("FDIC"), which was the immediate predecessor-in-interest to First Mount Vernon. In 1988, Peramco

granted a second-lien deed of trust in the Property to secure a loan extended to Shadmand Enterprises, Inc., a corporation also wholly owned by Peramco and the Shadmands. The second deed of trust was granted to the predecessor-in-interest to Stuart.

In 1990, Peramco filed a petition for relief (the "*Peramco I*" proceeding) under Chapter 11 of the Bankruptcy Code. *See* 11 U.S.C.A. §§ 1101 - 1174 (West 1993 & Supp. 2000). No plan of reorganization was confirmed in *Peramco I*. Eventually, the bankruptcy court dismissed Peramco I *sua sponte* for lack of activity. While *Peramco I* was pending, however, the Shadmands filed a joint Chapter 11 petition (the "*Shadmand I*" proceeding), initiating a case that was never formally consolidated with *Peramco I*. The Shadmands proposed several plans of reorganization in *Shadmand I*; the "Debtors Fifth Amended Plan of Reorganization" (the "Plan" or "*Shadmand I* Plan") was finally confirmed by order of the bankruptcy court in February 1994. The terms of the Plan required that the Property be sold and that the proceeds be applied without interest to the claim of FDIC, First Mount Vernon's predecessor-in-interest. Specifically, the Plan provided as follows:

> The Class Nine Claimant FDIC - Stuart Road Property
>
> The claim by the FDIC [which] is secured by a consensual first deed of trust between Peramco International, Inc., a corporation wholly owned by [the Shadmands], and [a] personal guarantee of [the Shadmands], is impaired. The lien attaches to the Stuart Road Property. The approximate principal amount of such lien is $250,000.00. [The Shadmands] will pay Creditor the full principal of any allowed claim without interest from the Distribution Account. [The Shadmands] will sell such property . . . free and clear of all liens and Claimant's lien would attach to the proceeds of the sale. Said proceeds would be distributed to the Distribution Account and then distributed to the creditor.

J.A. 130. Before the bankruptcy court issued its confirmation order, FDIC was provided an opportunity to review the Plan and reject it. FDIC voted to approve the Plan.

For reasons not fully apparent to us, the Property was not sold as directed by the confirmed Plan. In fact, following confirmation of the Plan, there was little significant activity at all in the *Shadmand I* case. In April 1996, the bankruptcy court, acting *sua sponte*, dismissed *Shadmand I*.

First Mount Vernon acquired the first deed of trust held by FDIC, and began foreclosure proceedings against the Property in August 1996, and scheduled the foreclosure for September 10, 1996. In short order, Tom and Tooran Shadmand decided to file a second joint Chapter 11 bankruptcy petition (the "*Shadmand II*" proceeding), which they did on September 9, 1996, automatically staying First Mount Vernon's efforts at foreclosure of the Property. *See* 11 U.S.C.A. § 362(a) (West 1993 & Supp. 2000). Subsequently, the bankruptcy court lifted the automatic stay, and First Mount Vernon rescheduled the foreclosure for May 1, 1997. Once again, however, the Shadmands staved off foreclosure when they caused Peramco to file its second petition for relief under Chapter 11 (the "*Peramco II*" proceeding) in April 1997. As in the *Shadmand II* case, the stay was eventually lifted in *Peramco II*, allowing First Mount Vernon to complete foreclosure on its first-lien deed of trust on the Property.

The bid price for the Property was $525,000. At the time of the foreclosure sale, First Mount Vernon's claim, including interest and other costs, had grown to $565,000. Thus, First Mount Vernon claimed it was entitled to the full amount of the proceeds from the foreclosure sale.

Stuart's immediate predecessor-in-interest, Amresco New England II L.P. ("Amresco"), initiated an adversary proceeding in the *Peramco II* bankruptcy case aimed at limiting First Mount Vernon's share of the proceeds from the sale of the Property to $250,000 under the terms of the Plan confirmed in *Shadmand I*.[1] The bankruptcy court granted summary judgment in favor of First Mount Vernon, concluding that it was not bound by the terms of the Plan confirmed in *Shad-*

---

[1]Amresco brought a similar adversary proceeding within the *Shadmand II* bankruptcy case; however, the bankruptcy court dismissed *Shadmand II* in June 1998.

*mand I* and that its claim to the proceeds of the Property was therefore not limited to $250,000.

On appeal, the district court affirmed the bankruptcy court. The district court rejected Stuart's contention that First Mount Vernon was bound by the terms of the confirmed Plan under section 1141(a) of the Bankruptcy Code and was making an impermissible collateral attack on the limits imposed by the Plan on its lien on the Property. The district court concluded that the bankruptcy court in *Shadmand I* "lacked jurisdiction to affect the assets of Peramco, a corporate debtor, through the Chapter 11 plan of the Shadmands, individual debtors. . . . The bankruptcy court would have had jurisdiction over Peramco's assets only if the [first] Shadmand[ ] and Peramco bankruptcies were consolidated." J.A. 325. Stuart appeals the decision of the district court.[2]

## II.

Stuart argues that First Mount Vernon was bound by the principle of collateral estoppel to the Plan that was accepted by First Mount Vernon's predecessor-in-interest and confirmed by final order of the bankruptcy court in *Shadmand I*. The terms of the Plan limit First Mount Vernon's interest in the Property to $250,000. Therefore, argues Stuart, First Mount Vernon's current adversary action seeking more than $250,000 of the proceeds from the sale of the Property amounts to an impermissible collateral attack on the final order of the bankruptcy court. We agree.

In *Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251, 1255 (4th Cir. 1997), Spartan Mills, which was secured by a pre-petition statutory textile processor's lien in the debtor's property, did not object to a Chapter 11 reorganization plan that subordinated Spartan Mills' lien on the property to Bank of America's lien when the Flor-

---

[2]The district court rested its decision largely upon *In re Deutchman*, 192 F.3d 457 (4th Cir. 1999), concluding that the Shadmands failed to take sufficient affirmative action in *Shadmand I* to extinguish First Mount Vernon's lien on the Property. The parties, however, agree that *In re Deutchman* is neither dispositive nor particularly applicable in this case. We agree.

ida bankruptcy court issued an order confirming the plan. In its order, the bankruptcy court notified all creditors that Bank of America, which was financing the debtors' ongoing operations, enjoyed a first priority lien that would become final if no challenge were brought within a certain time period. Although Spartan Mills brought an adversary proceeding after the sale of the property, it voluntarily dismissed that action. Subsequently, in a district court in this circuit, Spartan Mills initiated a declaratory judgment action seeking to have its interest in the debtor's property adjudged superior to Bank of America's interest. We affirmed the district court's dismissal of the declaratory judgment action:

> Spartan Mills cannot allow a final order that deprives it of a lien position to stand and then hope to attack it collaterally at another time and in another forum. . . . The lien of a creditor is void if the unappealed, final order of a bankruptcy court vested with proper jurisdiction so declares regardless of the bankruptcy court's failure to adhere to normal bankruptcy procedures.

*Id.* at 1256-57. Thus, confirmation orders by bankruptcy courts may not be attacked collaterally, "even if proper grounds exist to challenge" such orders, unless the challenge "is based on the original court's lack of jurisdiction." *Id.* at 1255.

We perceive no significant difference in the facts of *Spartan Mills* and our case. First Mount Vernon, through its predecessor-in-interest, received notice of and participated in a prior Chapter 11 proceeding that specifically dealt with the Property and voted in favor of a proposed reorganization plan that expressly limited its interest in the property. The plan was confirmed by order of the bankruptcy court without any objection. First Mount Vernon should not now be able to disregard the terms of the confirmed Plan. Nevertheless, First Mount Vernon argues that it is not bound by the Plan for two reasons. We reject both arguments.

### A. *Jurisdiction*

First Mount Vernon contends that its interest in the Property is not impaired by the *Shadmand I* order because the bankruptcy court in

*Shadmand I* lacked jurisdiction under section 524(e) of the Bankruptcy Code to modify the first-lien deed of trust in the Property held by its predecessor-in-interest FDIC. *See Spartan Mills*, 112 F.3d at 1255 (noting that a collateral challenge to a bankruptcy court's final order is permissible only if "it is based on the original court's lack of jurisdiction"). Under section 524(e), "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C.A. § 524(e) (West 1993). Peramco, not the Shadmands individually, technically held title to the Property, but the Shadmands individually were the debtors in *Shadmand I*. Indeed, the *Shadmand I* and *Peramco I* bankruptcy proceedings were never consolidated. According to First Mount Vernon, the Property was therefore an asset of the bankruptcy estate in *Peramco I* — not *Shadmand I* — and an order confirming a plan in *Shadmand I* would have no effect upon the assets at issue in *Peramco I*. That is, the confirmation order in *Shadmand I* had no effect on First Mount Vernon's interest in real property technically owned by Peramco, a non-debtor.

We disagree that the bankruptcy court was without the power to deal with the Property simply because it was owned by a non-debtor. Chapter 11 of the bankruptcy code directs that "the provisions of a confirmed plan bind the debtor . . . and any creditor, . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." 11 U.S.C.A. § 1141(a) (West 1993). Section 524(e), a general provision that does not apply only to Chapter 11 proceedings, does not divest the bankruptcy court of jurisdiction to confirm a Chapter 11 reorganization plan that settles a creditor's rights as to property held by a non-debtor where the creditor has approved of and voted for the reorganization plan. *See Menard-Sanford v. Mabey (In re A. H. Robins Co.)*, 880 F.2d 694, 702 (4th Cir. 1989). In *A. H. Robins*, we determined that section 524(e) does not deny the bankruptcy court the power to release liabilities of a non-debtor under the terms of a Chapter 11 plan when the creditors of the non-debtor approved of and accepted the terms of the plan. *See id.* (explaining that "'section 524 . . . does not by its specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an integral part of reorganization'" (quoting *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987)). We recognize that there are decisions to the contrary in other

circuits, *see, e.g.*, *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995), but we reject First Mount Vernon's implication that we should abandon our precedent. We are satisfied that the bankruptcy court in *Shadmand I* had jurisdiction to enter its confirmation order.

Also, we cannot ignore the fact that the bankruptcy court in *Shadmand I*, in its attempt to reach an equitable resolution of the matter, was dealing with the bankruptcy of a husband and wife who held the sole interests in the corporation in question. All of the parties having any interest in the Property were before the court at that time. The Plan, which unmistakably divested FDIC of its lien and allowed for payment of only $250,000 to satisfy the debt, was one of which FDIC was clearly aware and to which it in fact agreed. Indeed, all creditors having an interest in the Property were properly on notice and in complete agreement as to the disposition of the Property. Given the relationship between the Shadmands and Peramco, the corporation holding the property, along with the unique circumstances surrounding acceptance and confirmation of the plan, we decline to permit First Mount Vernon's collateral attack upon the judgment.

### B. *Notice*

First Mount Vernon's other argument is that even if the bankruptcy court had jurisdiction in *Shadmand I*, collateral estoppel cannot apply because First Mount Vernon's predecessor-in-interest did not receive sufficient notice in *Shadmand I*. *See Spartan Mills*, 112 F.3d at 1257 ("Due process requires that in order for a proceeding to be accorded finality, notice must be given that is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). According to First Mount Vernon, FDIC was an unsecured creditor of the individual Shadmands but a secured creditor of Peramco.[3] Thus, First Mount Vernon claims that FDIC was evalu-

---

[3]The joint stipulation of facts presented to the bankruptcy court provided that "[u]nder the Confirmed Plan, the FDIC was listed as an unsecured creditor." J.A. 77. The disclosure statement to the Plan, however, listed FDIC as a "Secured Claimant." J.A. 63. And the Plan notes that "the claim by the FDIC is *secured* by a consensual first deed of trust . . . [in] the Stuart Road Property." J.A. 43 (emphasis added). In any event, we do not believe that this characterization is determinative and, therefore, assume that FDIC was indeed an unsecured creditor in *Shadmand I*.

ating the proposed Plan in *Shadmand I* from the perspective of an unsecured creditor and was never given notice that the Plan could affect FDIC's standing as a secured creditor of Peramco. In other words, FDIC alleges it did not have sufficient notice that its lien on the Property would be extinguished as part of the individual Shadmands' reorganization since title to the Property was held by Peramco and the *Peramco I* bankruptcy was technically still pending (although no activity had occurred in the case). First Mount Vernon suggests that more precise notice indicating that the Plan covered property held by Peramco was required to satisfy due process.

We conclude that the Plan provided sufficient notice. It indicated that FDIC had a security interest in the Property, that FDIC's interest in the property was being addressed and, most importantly, that the debtors — the Shadmands — would be required to sell the Property "free and clear of all liens" and that "Claimant's lien would attach to the proceeds of the sale." J.A. 43. Clearly, this was sufficient notice that all liens on the Property, including FDIC's, would be extinguished under the terms of the Plan. FDIC was furnished with a ballot to accept or reject the Plan; it accepted it. First Mount Vernon cannot argue that FDIC was taken by surprise that its lien on the Property was to be extinguished under the terms of the Plan. We conclude First Mount Vernon is bound by the terms of the Plan confirmed in *Shadmand I*.

### III.

Accordingly, we reverse the decision of the district court and remand with instructions that judgment be entered in favor of Stuart limiting First Mount Vernon's interest in the proceeds to $250,000, in accordance with the terms of the Plan confirmed in *Shadmand I*.

*REVERSED AND REMANDED WITH INSTRUCTIONS*