**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 18-2160

DAVID SCHWARTZ, d/b/a Rent A Wreck; RENT A WRECK, INC., d/b/a Bundy Auto Sales,

      Plaintiffs – Appellees,

v.

J.J.F. MANAGEMENT SERVICES, INC.,

      Third Party Claimant – Appellant,

and

RENT A WRECK OF AMERICA, INC.; BUNDY AMERICAN, LLC,

      Defendants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Peter J. Messitte, Senior District Judge. (1:07-cv-01679-PJM)

Argued: March 21, 2019                Decided: April 29, 2019

Before WILKINSON and KING, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Duncan wrote the opinion, in which Judge Wilkinson and Judge King joined.

**ARGUED:** Michael Lichtenstein, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, PA, Potomac, Maryland, for Appellant. Roger Charles Simmons, GORDON &

SIMMONS, LLC, Frederick, Maryland, for Appellees. **ON BRIEF:** Jacob I. Weddle, Charles E. Remus II, GORDON & SIMMONS, LLC, Frederick, Maryland, for Appellees.

———————————

DUNCAN, Senior Circuit Judge:

This appeal represents the latest salvo in the scorched-earth assault by Appellant J.J.F. Management Services, Inc. ("J.J.F.") and its subsidiary Rent-a-Wreck of America, Inc. ("RAWA") on Appellee David Schwartz, owner of a RAWA franchise territory previously awarded him by a jury verdict over RAWA's objections. J.J.F. appeals from the district court's denial of J.J.F.'s third-party claim to funds in certain deposit accounts that Schwartz sought to garnish in his effort to satisfy a contempt award against RAWA for engaging in a pattern of bad faith conduct.

J.J.F. contends that it has priority over Schwartz's claims to the accounts, which are owned by RAWA and Bundy American, LLC ("Bundy"), because it made loans to RAWA for which the accounts served as secured and perfected collateral. J.J.F. also contends that the district court erred by failing to consider the preclusive effect of a debtor-in-possession financing order (the "DIP Order") entered after RAWA and Bundy filed for bankruptcy.

For reasons detailed below, we affirm. We find that the district court did not err in concluding that Maryland law permits a trial court to require a third-party movant to establish a bona fide claim to ownership. In so holding, we decline to grant preclusive effect to the DIP Order, and we give effect to the district court's authority to ensure compliance with its contempt orders.

I.

3

Schwartz is the founder of two companies: RAWA, a national business that rents used automobiles; and Bundy, a company that brokers RAWA-brand franchises. J.J.F.'s predecessor-in-interest purchased all outstanding RAWA stock in 2006, and since then, Schwartz's relationship with RAWA and J.J.F. has been defined by litigation. We begin by summarizing the key proceedings in the parties' history before turning to the facts underlying this appeal.

A.

Disputes between Schwartz and RAWA have come before us multiple times. As relevant here, after J.J.F.'s takeover of RAWA, we affirmed a jury verdict holding that Schwartz has an implied franchise agreement to continue operating a Rent-a-Wreck franchise in the greater Los Angeles area. *Schwartz v. Rent A Wreck Am. Inc.*, 468 F. App'x 238, 249 (4th Cir. 2012) (unpublished). Following this determination, the district court ordered that RAWA's call center not dissuade potential customers from transacting with Schwartz's Rent-a-Wreck franchise location or otherwise divert business away from Schwartz's franchise territory. *See Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 613 (D. Md. 2017) (describing the district court's prior order). The district court later held RAWA in contempt of that order upon finding that the RAWA call center was informing potential customers that there was no Rent-a-Wreck location inside Schwartz's franchise territory. *Id.* at 614, 622–23.

In its contempt order, the district court recounted RAWA's acts of bad faith throughout the parties' relationship. *Id.* at 614–15. For instance, RAWA had

4

"deliberately changed the address and hours it was listing for Schwartz's franchise on its website to an outdated address and to patently incorrect hours." *Id.* at 615. RAWA also "unilaterally demanded that Schwartz in a very short time frame either increase his franchise's fleet size from 150 vehicles to 1,726 vehicles or face termination of his franchise." *Id.* Further, RAWA's CEO John J. Fitzgerald had made "direct verbal threats" to Schwartz indicating that "he was going to make things difficult for Schwartz and take everything Schwartz had." *Id.* Consequently, the district court ordered RAWA to pay Schwartz $83,620.80 on June 29, 2017 (the "contempt award"). *Id.* at 622.

Less than a month after the district court ordered RAWA to pay the contempt award, RAWA and Bundy filed a voluntary bankruptcy petition in the Delaware Bankruptcy Court. The bankruptcy proceedings placed an automatic stay on Schwartz's attempts to collect on the contempt award. The bankruptcy court later dismissed the petition, finding that RAWA and Bundy were not insolvent, that they had not filed for bankruptcy in good faith, and that the petitions were "just another chapter in the attempt to terminate Mr. Schwartz's [Los Angeles-area] franchise." *In re Rent-A-Wreck of Am., Inc.*, 580 B.R. 364, 388 (Bankr. D. Del. 2018).

B.

The current litigation conveniently began after the bankruptcy petition was dismissed and the automatic stay was lifted, when Schwartz resumed his attempts to collect on the contempt award. Schwartz located two deposit accounts in RAWA's name at Wells Fargo Bank in Baltimore, Maryland. He filed a motion for writs of garnishment

5

against the accounts in federal district court on April 17, 2018. Garnishee Wells Fargo responded that the accounts contained assets sufficient to satisfy the contempt award.

J.J.F. filed a motion to intervene in the garnishment proceedings on May 2, 2018, claiming an interest in the deposit accounts superior to Schwartz's interest. The district court determined that J.J.F. was an interested third party with respect to the garnishment proceedings, and it noted that Maryland Rule 2-643 ("Rule 2-643") creates an avenue by which an interested third party can claim an interest in property under levy. *See* Md. Rule 2-643(e). It therefore denied J.J.F.'s motion to intervene and instead treated J.J.F.'s claims as a motion by a third party pursuant to Rule 2-643(e) before proceeding to consider J.J.F.'s claims on the merits. J.A. 178. It is to those issues we now turn.

J.J.F. claimed that it has an interest in the deposit accounts superior to Schwartz's. It based this contention on two loans that J.J.F. purportedly made to RAWA and Bundy which name the deposit accounts as secured and perfected collateral.

First, J.J.F. claimed that it loaned RAWA over two million dollars pursuant to a promissory note dated March 31, 2006 with a maturity date of March 31, 2011 (the "pre-petition financing"). The promissory note grants J.J.F. an interest in "any money, funds, credits or other property of any nature whatsoever of [RAWA] now or at any time hereafter" belonging to RAWA as collateral for the loan. J.A. 614. J.J.F. purportedly perfected this interest with respect to the Wells Fargo deposit accounts when it entered into Deposit Account Control Agreements ("DACAs") with RAWA for those accounts

6

on March 6, 2018.[1] This date--nearly seven years after the note matured--fell after the dismissal of the bankruptcy proceedings but before Schwartz's garnishment motion.

Second, J.J.F. claimed that it has a superior interest in the deposit accounts by virtue of a debtor-in-possession financing agreement (the "DIP financing") authorized by the bankruptcy court in its DIP Order on August 30, 2017. The DIP Order authorized J.J.F. to loan money to RAWA and Bundy for the specific purpose of funding their ordinary business expenses during bankruptcy. It also created "continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in" all of RAWA's and Bundy's assets, including all deposit accounts. J.A. 504–05. The bankruptcy court entered the DIP Order as a final order after providing all interested parties, including Schwartz, with notice and a hearing. In the DIP Order, the bankruptcy court found that RAWA, Bundy, and J.J.F. negotiated the financing agreement in good faith and that the parties extended the financing and the use of collateral in good faith. The terms of the DIP Order establish that it survives the bankruptcy court's dismissal of RAWA's and Bundy's bankruptcy petition.

The district court considered these transactions in the instant proceeding and expressed doubt as to whether J.J.F.'s claim to the deposit accounts was bona fide. The court asked J.J.F. to produce documents substantiating the validity of these loans. While J.J.F. produced the promissory note, the DACAs, annual RAWA balance sheets, and the

---

[1] In Maryland, a DACA or similar control agreement is the only method for perfecting a security interest in a deposit account. *See* Md. Code Ann., Com. Law §§ 9-312, 9-314.

7

DIP Order, it failed to produce any record of payments from J.J.F. to RAWA or any prior attempts by J.J.F. to collect on the loans. After considering the evidence, the district court determined that "it remain[ed] highly doubtful that [J.J.F.] ever actually loaned money to RAWA." *Schwartz v. Rent-A-Wreck of America*, No. PJM 07-1679, 2018 WL 4567106, at *4 (D. Md. Sept. 24, 2018). Rather, it concluded that J.J.F.'s motion was "one more shameless attempt" by J.J.F., RAWA, and Bundy to avoid paying the contempt award. *Id.* at *6. The district court accordingly denied J.J.F.'s claim to the deposit accounts, concluding that a third-party claimant under Rule 2-643(e) must demonstrate its bona fide entitlement to the garnished property. This appeal followed.

## II.

We review a district court's factual findings for clear error, and we review its conclusions of law, including its interpretations of state law, de novo. *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *see Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) ("[A] court of appeals should review *de novo* a district court's determination of state law.").

## III.

J.J.F. contends that the district court erred in denying its third-party claim to the funds in the deposit accounts on the ground that its interest is superior to that of Schwartz. Under Maryland law, one way by which a third party can establish the priority of its claim to garnished or levied property is by demonstrating that it has a valid superior

8

perfected security interest in that property. *See, e.g.*, Md. Code Ann., Com. Law § 9-327 (establishing the order of priorities for security interests in deposit accounts).

First, J.J.F. argues that it has a valid ownership claim by virtue of both the pre-petition financing and the DIP financing, both of which J.J.F. contends grant it a secured, perfected interest in the accounts. It therefore contends that the district court erred in denying its motion on the grounds that it could not establish a bona fide claim of ownership to the accounts. Second, J.J.F. argues that the DIP Order contains relevant findings of fact and conclusions of law with respect to the validity of its claim to the accounts and that the district court therefore erred in declining to accord it preclusive effect. We address each argument in turn.

### A.

J.J.F. contends that the district court erred in denying its motion on the grounds that J.J.F. failed to establish the validity of its claim to the deposit accounts. The district court treated J.J.F.'s claim as a motion by a third party to release property under levy under Rule 2-643(e). Rule 2-643(e) creates a mechanism by which any third party "who claims an interest in property under levy may file a motion requesting that the property be released." Md. Rule 2-643(e). The issue here is whether a court may deny such a motion if it finds that the third-party claimant cannot establish a bona fide claim of ownership of the property in question.

We affirm. Maryland law permits a court to deny the Rule 2-643(e) motion of a third party who cannot establish a bona fide claim of ownership, and the district court here did not clearly err in determining that J.J.F. could not satisfy that burden.

1.

Under Maryland law, a third party who claims ownership over levied property bears the burden of establishing its claim to ownership of the property. *Guyer v. Snyder*, 104 A. 116, 117 (Md. 1918). Consequently, when the third party cannot meet its burden of demonstrating a bona fide claim to ownership, a court may deny that party's Rule 2-643(e) motion claiming an interest. This is consistent with other cases involving levied property, in which Maryland courts have denied third party claims when the third party could not show that it had a bona fide claim of ownership to the property. For instance, the Court of Appeals of Maryland held that a third party could not succeed on a claim against property that had been levied by a sheriff in anticipation of a sale to satisfy a judgment because the third party failed to meet its burden of proving ownership. *Drury v. Pashen*, 175 A.2d 771, 774 (Md. 1961).

Additionally, federal district courts applying Maryland law have denied Rule 2-643(e) motions where the third party clearly had no bona fide interest in the property in question. *See, e.g.*, *Cutting Edge Techs., Inc. v. Nosyuiaido*, No. WDQ-01-2855, 2011 WL 5118446, at *2 (D. Md. Oct. 26, 2011) (unpublished) (denying a Rule 2-643(e) motion, in part because the third-party movant "has not demonstrated a sufficient factual basis for his assertion that the property is his"); *Transpacific Tire & Wheel, Inc. v. Orteck*

10

*Int'l, Inc.*, No. DKC 06-0187, 2010 WL 4296585, at \*2 (D. Md. Oct. 29, 2010) (unpublished) (denying a Rule 2-643(e) motion because the third-party movant did not hold an interest in the property at issue). Persuaded by this analysis, we hold that a court may deny a Rule 2-643(e) motion when a third party cannot establish a bona fide claim of ownership.

2.

The district court here did not clearly err in denying J.J.F.'s Rule 2-643 motion. It did so because it concluded that J.J.F. needed to "demonstrate its bona fide entitlement to the garnished accounts that has priority over Schwartz's claim" and that "[b]y a wide stretch," J.J.F. failed to meet this burden. *Schwartz*, 2018 WL 4567106, at \*4. We consider, first, J.J.F.'s purported interest arising out of the pre-petition financing, and second, its purported interest arising out of the DIP financing.

With respect to the pre-petition financing, the district court asked J.J.F. to present evidence establishing the validity of that claim. While J.J.F. produced some documents bearing on the purported loan, it was unable to conclusively show that it had ever transferred money to RAWA or Bundy. After considering the documents that J.J.F. produced, the district court found it "highly doubtful that [J.J.F.] ever actually loaned money to RAWA," and it noted the "questionable timing" of the DACAs purporting to perfect J.J.F.'s interest in the accounts. *Id.* at \*4. It concluded that "[t]he idea that the [pre-petition financing] was made more than 10 years ago, but was never collected on, and was overdue, then suddenly became due when Schwartz came calling is nothing short

11

of preposterous." *Id.* at *5. We agree that the district court did not clearly err in determining that the circumstances surrounding the pre-petition financing suggest that J.J.F. lacked a bona fide claim of ownership of the accounts.

Turning to J.J.F.'s purported interest arising out of the DIP financing, we conclude that the district court also did not clearly err by concluding that J.J.F. lacked a valid claim to the accounts with respect to the DIP financing. Indeed, it articulated multiple bases for this conclusion.

First, as we just noted, the district court concluded that J.J.F. had not produced evidence that money ever changed hands between J.J.F. and RAWA. This finding applies equally to the DIP financing and the pre-petition financing. Indeed, J.J.F. can point to nothing in the record--aside from a stipulation by RAWA in the DIP Order--to suggest that any money was, in fact, ever paid.

Second, the district court concluded, consistent with the bankruptcy court, that RAWA and Bundy initiated the bankruptcy proceedings in bad faith. The district court recognized that the entire "bankruptcy proceedings appear to have been nothing more than thinly-veiled efforts to impede" Schwartz from collecting on the contempt award. *Id.* at *6. The court did not clearly err in relying on these findings to conclude that the DIP financing, which arose out of those bankruptcy proceedings, did not establish a valid claim to the accounts.

Finally and relatedly, the district court noted that the insider relationship between RAWA and J.J.F. "further calls into question the validity" of J.J.F.'s claim to the accounts. *Id.* at *5*; cf. In re TMT Procurement Corp.*, 764 F.3d 512, 515–17, 522 (5th

12

Cir. 2014) (declining, in the bankruptcy context, to find that a DIP lender acted in good faith when it was aware that a DIP creditor had an insider relationship with the debtor and that an unrelated third party had an adverse claim to the debtor's assets). J.J.F. "is controlled by John J. Fitzgerald, Jr., the same individual who sits as a Director and Chairman of the Board of Directors at RAWA." *Schwartz*, 2018 WL 4567106, at *5. Indeed, RAWA is wholly owned by J.J.F. and was so when J.J.F., RAWA, and Bundy negotiated the DIP financing. J.J.F. does not challenge the district court's factual findings regarding the nature of its relationship with RAWA, which were accurate. We therefore cannot say that it erred by citing to the nature of the relationship between the parties as evidence that J.J.F.'s claim to the accounts lacked validity.

In sum, on these facts, we find it difficult to grant J.J.F. the benefit of the doubt with respect to whether it had a valid claim to the accounts. Indeed, we share the district court's concerns that "[a]t the end of the day, [J.J.F.'s Rule 2-643(e) motion] is one more shameless attempt by [RAWA, Bundy, and J.J.F.] to avoid paying the [contempt award owed to Schwartz]." *Id.* at *6. We are reluctant to allow J.J.F.--an insider of RAWA, whose attempts to frustrate Schwartz's franchise rights and collection of the contempt award have been well-documented--to jump the line of priorities that Maryland secured transactions law establishes without a clear showing that J.J.F. is actually entitled to the funds in the deposit accounts at issue.

B.

13

Notwithstanding the above, J.J.F. contends that the DIP Order conclusively establishes that J.J.F.'s claim to the deposit accounts is valid because that order purportedly shows both that J.J.F. has a superior interest in the deposit accounts and that the DIP financing was done in good faith. Accordingly, J.J.F. contends that the district court erred in failing to consider the preclusive effect of the DIP Order on J.J.F.'s claim.[2]

Res judicata operates to preclude subsequent litigation of certain matters when there has been a prior judgment between the same parties.[3] *First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough* (*In re Varat Enters.*), 81 F.3d 1310, 1315 (4th Cir. 1996). A prior judgment between the same parties may operate to bar subsequent litigation under one of two related res judicata doctrines: claim preclusion or issue preclusion. *Id.* We conclude that neither bars Schwartz's claims.

---

[2] J.J.F. claims that "the lower court neglected to mention the debtor-in-possession financing and the DIP Order." Appellant's Br. at 10. We note, however, that the district court did consider the DIP Order as evidence of whether J.J.F.'s claim was bona fide. *See Schwartz*, 2018 WL 4567106, at *3 (noting that J.J.F. did produce "a copy of Judge Silverstein's final order from RAWA's and Bundy's bankruptcy proceedings approving post-petition filing for [J.J.F.]").

[3] A bankruptcy order is considered a prior judgment between the same parties for purposes of res judicata when the parties to the subsequent litigation are comprised of the bankrupt debtor and any party in interest to the bankruptcy proceeding. *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003). A party in interest to a bankruptcy proceeding is "one who has a pecuniary interest in the distribution of [the debtor's] assets to creditors." *Id.* Schwartz was a party in interest to the bankruptcy proceedings involving RAWA, J.J.F.'s parent company; he had a pecuniary interest in the distribution of RAWA's assets because RAWA owed money to him in the form of the contempt award. The DIP Order is therefore a prior judgment between the same parties for the purposes of res judicata.

14

1.

Claim preclusion applies when later litigation between two parties arises from the same cause of action as previous litigation between the parties. *Id.* Claims arise out of the same cause of action when they "arise out of the same transaction or series of transactions . . . or the same core of operative facts." *Id.* at 1316 (citations omitted). In the bankruptcy context, we have held that a legal malpractice claim arose out of the same cause of action as a bankruptcy fee order when the malpractice claim related to the quality of legal services provided in connection with the bankruptcy proceeding. *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003). Similarly, a debtor was barred from contesting a creditor's claims to the debtor's property outside the bankruptcy context when the bankruptcy court had already determined that those claims were legitimate. *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 247 (4th Cir. 2015). In contrast, a bankruptcy plan confirmation did not bar a creditor from later asserting claims to the debtor's property during the same bankruptcy proceeding when the plan confirmation made no determination as to the validity of those claims because that issue was not before the bankruptcy court. *LVNV Funding, LLC v. Harling*, 852 F.3d 367, 374–75 (4th Cir. 2017).

Here, the claims at issue in this case do not arise out of the same cause of action as those at issue in the DIP Order. The purpose of the DIP Order was to provide for RAWA's and Bundy's financing needs during bankruptcy. In contrast, the present action relates to J.J.F.'s priority over the funds in the previously garnished accounts. The two

15

proceedings therefore do not concern the "same core of operative facts," *In re Varat Enters.*, 81 F.3d at 1316.

2.

J.J.F.'s issue preclusion argument fares no better. Issue preclusion applies "when the later litigation arises from a different cause of action." *Id.* at 1315. It "operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction' in the first litigation." *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). The issue in question is whether J.J.F.'s claim to the deposit accounts is valid. We hold that the DIP Order does not preclude Schwartz from contesting the validity of J.J.F.'s interest in the deposit accounts here because that issue was not actually litigated for purposes of the DIP Order.

J.J.F. contends that the DIP Order was actually litigated because it was accompanied by notice and a hearing, at which Schwartz was telephonically represented by counsel. However, our inquiry focuses on whether the *issue* in question was actually litigated. *See id.* The bankruptcy court did not decide the merits of J.J.F.'s claim to an interest in the deposit accounts.[4] Instead, it cabined any statements on the validity of

_____

[4] Indeed, such a determination would be atypical at the DIP financing stage; in bankruptcy, "[f]inancing motions are typically filed early in a case under emergency circumstances and done on an expedited basis," and, therefore, the court is unlikely to make findings on the validity of interests at issue. *In re Mariner Post-Acute Network, Inc.*, 267 B.R. 46, 54–55 (Bankr. D. Del. 2001).

16

J.J.F.'s existing interest to a section of the DIP Order that was explicitly based on RAWA's and Bundy's stipulations, "without prejudice to the rights of parties in interest," including Schwartz. J.A. 497. Therefore, the validity of J.J.F.'s interest was not actually litigated for the DIP Order.

This case is therefore distinguishable from our decision in *Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251 (4th Cir. 1997), on which J.J.F. seeks to rely. We held there that a DIP order barred a creditor from later asserting that it had a priority security interest in a debtor's assets. *Id.* at 1255–57. However, the preliminary DIP order by the bankruptcy court in that case imposed a deadline by which creditors could raise challenges to the validity or priority of the pre-petition interests and claims at issue in the DIP order, after which its statements on the validity and priority of the pre-petition interests "would be established" as a finding of the bankruptcy court and would "no longer be provisional." *Id.* at 1253. We held that the creditor was barred by res judicata from later litigating the priority of the interests in that DIP order because it had notice of the deadline and did not timely object to the DIP order. *Id.* at 1257–58.

In contrast, the bankruptcy court here did not make findings on the validity of the pre-petition interests at issue in the DIP Order. The parties did not adjudicate the matter, and the bankruptcy court did not purport to reach a conclusion as to the validity of J.J.F.'s existing interest. Instead, the bankruptcy court simply entered the order, which itself was based upon RAWA's and Bundy's stipulations as to the pre-petition financing. While the court did set a deadline by which interested parties could challenge those stipulations, it did not state, as the bankruptcy court in *Spartan Mills* did, that it would transform those

17

statements into findings of fact if no party objected. *See id.* at 1253. Thus, unlike in *Spartan Mills*, the validity of the interests in the DIP Order here was not actually litigated. Issue preclusion therefore does not bar Schwartz's claims.

Accordingly, we hold that the DIP Order does not have preclusive effect here under principles of res judicata. Were we to hold otherwise, the practical effect would be to permit two related parties to strip a third party of his legitimate claims to assets by negotiating an insider financing agreement pursuant to a sham bankruptcy. We decline to endorse such a scheme.

IV.

The district court did not clearly err in finding that J.J.F. could not demonstrate a bona fide third-party interest in the accounts. We therefore affirm its denial of J.J.F.'s motion and instruct it to take whatever measures it deems appropriate to protect the judicial process with respect to its contempt orders.

*AFFIRMED*